June 26, 2018

**VIA ECF**

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

Re: ***The New York Immigration Coalition, et al. v. United States Department of Commerce, et al.*, 18-CV-5025-JMF (S.D.N.Y.)**

Dear Judge Furman:

Pursuant to the Court's June 13, 2018 Order (ECF No. 21), the New York Immigration Coalition Plaintiffs ("Plaintiffs") respectfully submit this letter to explain why Plaintiffs are entitled to discovery outside the Administrative Record ("Record"). The parties met and conferred on June 22 and 25, and there remains an open dispute.

There are three independent legal grounds supporting Plaintiffs' right to discovery beyond the Record. ***First***, Plaintiffs are entitled to discovery with respect to their constitutional claims, which rest on facts separate from the Administrative Procedure Act ("APA") count. ***Second***, discovery is necessary where, as here, the Record is demonstrably incomplete. And ***third***, Plaintiffs are entitled to discovery where there is bad faith or improper behavior by the agency officials, as Plaintiffs can show here.

**1. Plaintiffs are entitled to discovery on their Fifth Amendment and Apportionment claims.** Under Rule 26(b)(1), a party may take discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Courts routinely permit discovery in cases brought under the Apportionment Clause. *See, e.g, City of New York v. Dep't. of Commerce*, 713 F. Supp. 48, 52, 54 (E.D.N.Y. 1989). Plaintiffs' equal protection claim will turn on whether Defendants acted with discriminatory intent. Plaintiffs require discovery on the variety of factors that are relevant to the discriminatory intent analysis, including "contemporary statements by" the decisionmakers; the historical background of the decision; any procedural or substantive departures; and the disparate impact of the decision. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-68 (1977). Courts routinely permit discovery into intentional discrimination claims.[1]

Here, discovery would include inquiry into the genesis of the decision to add a citizenship question, the claim that the Administration added the question to better enforce the Voting Rights Act, and the roles played by individuals outside of the Census Bureau such as agents of President Trump's reelection campaign, Steve Bannon, Kris Kobach, and John Gore,

---

[1] *See, e.g.*, *Reynolds v. Barrett*, 685 F.3d 193, 198 (2d Cir. 2012) (referencing discovery in intentional discrimination case); *Janfeshan v. U.S. Customs & Border Prot.*, No. 16CV6915ARRLB, 2017 WL 3972461, at *13 (E.D.N.Y. Aug. 21, 2017) (ordering case to proceed to discovery on intentional discrimination claim against federal agency).

several of whom have histories of animus toward immigrant communities of color.[2] Plaintiffs would also seek discovery of information uniquely in Defendants' possession concerning any procedural and substantive departures from Census Bureau practice and 2020 Census Operational Plan.

Plaintiffs also have the right to discovery on any matters bearing on the disparate impact of including the citizenship question on immigrant communities of color, including any effect on congressional apportionment, intra-state redistricting, or the distribution of federal funds. Such discovery would include data the Census Bureau has gathered concerning the impact of the citizenship question in other surveys (the ACS and the CPS) and data from the tests the Census Bureau has run following the decision, including the Rhode Island "end-to-end" test—which has involved extensive focus groups. Much of this testing was conducted following Secretary Ross' March 26, 2018 memorandum ("Ross Memo"), and is not found in the Record.

**2. The Record is demonstrably incomplete.** The "whole record" that an agency must produce for APA claims contains "all documents and materials directly or indirectly considered by the agency." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993). "Allowing the Government to determine which portions of the administrative record the reviewing court may consider would impede the court from conducting the 'thorough, probing, in-depth review' of the agency action with which it is tasked." *In re Nielsen*, No. 17-3345 (2d Cir. Dec. 27, 2017). Courts have required supplementation of the record or considered extra-record evidence in a variety of contexts. *See generally Fund for Animals v. Williams,* 391 F. Supp. 2d 191, 197-98 (D.D.C. 2005) (summarizing grounds). Here, it is evident that the Record is incomplete and should be supplemented.

*a. The Record Lacks Pre-December 12, 2017 Materials and Materials From the Interagency Process and Commerce's Instigation of the Request*: The original Ross Memo states that Ross' consideration of adding the citizenship question began "[f]ollowing receipt of the DOJ request" on December 12, 2017. But the Government and Secretary Ross now concede that this assertion was false. Contrary to Secretary Ross' original explanation, it was Commerce that months before December 12 asked whether DOJ "would support, and if so would request" addition of the citizenship question. *New York v. Dep't. of Commerce*, No. 18-cv-2921 ECF No. 189-1 at 1 (S.D.N.Y. June 21, 2018). In other words, DOJ's request, the supposed rationale for the citizenship question, was solicited by Commerce which, also contrary to the Ross memo, began considering this change "in early 2017," *California v. Dep't. of Commerce*, No. 3:18-cv-1865, ECF No. 28 at 3 (N.D. Cal. June 14, 2018).

- There is virtually nothing in the Record from DOJ or Commerce reflecting the genesis of the December 12 request. The sole exception -- AR 764 (attached as Exhibit 1) -- is a July 2017 email exchange involving Secretary Ross, three senior aides, and Kobach. In this exchange, Kobach reminds Ross of a prior discussion—which Kobach describes as "at the direction of" Steve Bannon—during which Kobach proposed adding a citizenship question to "address the problem that aliens who do not actually 'reside' in the United States are still counted for

[2] In contrast with the documentation of other conversations he had with other "stakeholders," *e.g.*, AR 1194, 1198-1209, 1213-16, Secretary Ross conspicuously failed to include in the Record any of his notes from his discussions with Kobach or Bannon.

congressional apportionment purposes." Left unanswered in the Record are critical questions like: Why did Commerce solicit the question? What was the response? How did the rationale for the question morph from the "problem that aliens . . . are still counted for congressional apportionment purposes" to "permit more effective enforcement" of the Voting Rights Act?[3]

- Nor are there any other communications with DOJ other than the December 12 letter. Secretary Ross testified before Congress (and FOIA responses reflect) there were further meetings with DOJ. No documentation of such meetings is in the Record.

- There are virtually no documents in the Record concerning Commerce's communications about the citizenship question with other unnamed "governmental officials" and "governmental components, The single exception -- AR 660-661 (attached as Exhibit 2) is a heavily redacted log reflecting that Commerce has had ongoing discussions with the Department of Homeland Security ("DHS") and State Department to obtain data "on naturalizations," "applications," and "visas and passports." But none of these communications, nor other evidence of the interagency consultation, is found in the Record.

*b. The Record Lacks Support for Key Elements of the Decision and Evidence of the "Comprehensive" or "Orderly" Review:* The Ross Memo states that Commerce conducted a "comprehensive review process." The Record similarly indicates that Secretary Ross promised almost 100 separate stakeholders that Commerce was conducting an "orderly review" of the DOJ request" and that Acting Census Bureau Director Ron Jarmin specified that the review "includes exploring other options that don't require adding the question to the Census." AR 778. But there is little evidence of such a review in the Record. The following are illustrations of these deficiencies:

- There are virtually no materials reflecting key procedural or substantive points described in the Ross Memo. For example, there are no presentations, briefing materials, notes, minutes, or other memorialization of Ross Memo's statement that Ross "met with Census Bureau leadership on multiple occasions to discuss their process for reviewing the Department of Justice ("DOJ") request, their data analysis, my questions about accuracy and response rates, and their recommendations." The record contains no data analysis and no recommendations from the Census Bureau Director or Deputy Director nor from the Associate Director or Assistant Director of the Decennial Census.

- There are no materials (presentations, memos, etc.) supporting the Ross Memo's claim of a "thorough assessment" including "legal, program, and policy considerations."

- There is no analysis in the Record of DOJ's asserted need for Decennial Census data on citizenship, or why alternate data sources would not be sufficient.

- Although the Ross Memo discusses the four alternatives the Census Bureau considered, the Record contains no materials supporting the Ross Memo's analysis. There is no

---

[3] FOIA responses (not in the Record) confirm that Gore ghostwrote the December 12 memo and that Gore frequently communicated with the Presidential Commission on Election Integrity (PCEI) which Kobach co-Chaired.

discussion or documentation regarding why Secretary Ross decided on Alternative D, when it was clearly more expensive and significantly less accurate than Alternative C. The only three disclosed documents discussing the alternatives are a set of question and answers and two memos from the Census Bureau's Chief Scientist John Abowd, both of which strongly urge that the Census Bureau ***not*** adopt the citizenship question. Much of the analysis and materials Abowd relied upon and sources cited in the Q&A are missing from the Record.

- Similarly, the Ross Memo cites (i) "additional empirical evidence" from the survey company Nielsen, (ii) cost estimates from the Nonresponse Follow Up Operation, and (iii) international practices. These are all missing from the Record.

*c. The Record Lacks Materials from Individuals Involved in the Review*: When an agency decision maker relies "on the work and recommendations of subordinates, those materials should be included [in the administrative record] as well." *Amfac Resorts, LLC v. U.S. Dep't of Interior*, 143 F. Supp.2d 7, 12 (D.D.C. 2001). The Ross Memo indicates that Secretary Ross relied heavily on subordinates at Commerce and the Census Bureau in reaching his determination. But the Record contains almost no materials from other individuals. This includes key personnel at Commerce (Karen Dunn Kelly, Wendy Teramoto, Brooke Alexander, Izzy Hernandez, Mike Walsh, Brian Lenihan, and Kevin Manning) and the Census Bureau (Acting Director Jarmin, Deputy Director Lamas), key managers of the Decennial Census (Albert Fontenot, James Treat), or key individuals whom FOIA responses indicate were involved in evaluating the issue (John Abowd, Shawn Klimek, Misty Heggeness, Michael Berning, and Roberto Ramirez). FOIA responses also indicate that the Census Bureau developed a "swat" team to address the question involving other key Census Bureau personnel, including Steven Buckner, Burton Reist, Joanne Crane, and Eloise Parker.

*d. The Record Failed to Include a Privilege Log*: Defendants have indicated that the Record is limited to "non-privileged factual material" actually considered by Secretary Ross. *California v. Dep't. of Commerce*, 3:18-cv-1865, ECF No. 28 at 1 (N.D. Cal. June 14, 2018). During the June 22 meet and confer, the Government confirmed it withheld materials under an expansive view of deliberative privilege. In similar circumstances, the Government has been compelled to provide a privilege log. *E.g., In re Nielsen*, No. 17-3345 (2d Cir. Dec. 27, 2017). The Government's claim of deliberative privilege is without basis; the "historical and overwhelming consensus and body of law within the Second Circuit is that when the decision-making process itself is the subject of the litigation, the deliberative process privilege cannot be a bar to discovery." *Children First Found., Inc. v. Martinez*, No. CIV. 1:04-CV-0927, 2007 WL 4344915, at *3 (N.D.N.Y. Dec. 10, 2007). The Government should produce a log immediately.

**3. Discovery is required because there is evidence of bad faith and improper behavior by Government personnel.** *See, e.g., Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997); *Tummino v. Von Eschenbach*, 427 F.2d 212, 230 (E.D.N.Y. 2006). Here, there is more than sufficient indication of bad faith and improper behavior. This includes: the complete lack of support in the Record that decennial citizenship data will further Voting Rights Act enforcement; the abandonment of the standard Census questionnaire approval processes and testing regime set forth in the 2020 Census Operational Plan; Secretary Ross overruling the

judgment of the Census Bureau's Chief Scientist and professional staff; political pressure placed on the decision (including claims from the Trump reelection campaign that the President "mandated" the decision, and pressure applied by Bannon and Kobach) and the repeated statements by senior Government officials of their animus towards immigrants and their desire to disenfranchise or otherwise punish immigrant communities of color. In addition to these matters, Defendants have engaged in a disturbing pattern of deception, including: (i) the Ross Memo's misleading account of the timing and origin of the citizenship question; (ii) the failure of Secretary Ross and other Commerce officials to produce documentation of his conversations with Kobach or Bannon during which Kobach admitted that the purpose of the question was to prevent immigrants from being counted for apportionment purposes; and (iii) the efforts by DOJ to conceal that the request memo was ghostwritten by Gore.

Appropriate Scope of Discovery: The following discovery is necessary for a full and fair development of the facts of this case:

1. Commerce and the Census Bureau should supplement the Record to include (i) all materials dating back to the start of the Administration, (ii) from all personnel involved in consideration or evaluation of the question, and (iii) all materials and data considered.

2. Party discovery: There should be limited document discovery from Defendants, including survey data (e.g., ACS and CPS) and post-decisional information and data (e.g., the 2018 End-to-End test, including any CBAM surveys and focus groups). Plaintiffs would also like to conduct a 30(b)(6) deposition of the Census Bureau and to conduct ten individual depositions of agency personnel.

3. Third party discovery: Discovery of other agencies who were consulted as part of the interagency review (DOJ, DHS, State) and third parties (e.g., Bannon, Kobach) is appropriate. Plaintiffs would also like to conduct a limited number of 30(b)(6) depositions of the agencies and third parties and six individual third-party depositions.

4. Expert discovery: Discovery here would also include expert testimony regarding the substantive departures from Census Bureau practice, the validity of the articulated rationale for the change, possible effect of adding the citizenship question on the undercounting of immigrant communities, and consequences for apportionment and federal funding. These experts include potential former Commerce employees who may be subject to *Touhey* regulations.

Plaintiffs have conferred with the State of New York Plaintiffs and have advised the Defendants that we currently anticipate seeking twenty fact depositions between the two cases.

For these reasons, and those set forth by the Plaintiffs in *State of New York, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-2921 (JMF), the NYIC Plaintiffs respectfully request that discovery be permitted in this matter immediately and on an expedited basis, and in accordance with the schedule proposed by the *State of New York* Plaintiffs.

Respectfully submitted,

/s/ Dale Ho
Dale Ho
David Hausman*
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 549-2693
dho@aclu.org
dhausman@aclu.org

Sarah Brannon** ***
Davin Rosborough***
Ceridwen Cherry**
American Civil Liberties Union Foundation
915 15th Street, NW
Washington, DC 20005-2313
202-675-2337
sbrannon@aclu.org
drosborough@aclu.org
ccherry@aclu.org

Arthur N. Eisenberg
Christopher T. Dunn
Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 607-3300
aeisenberg@nyclu.org
cdunn@nyclu.org
pgrossman@nyclu.org

Samer E. Khalaf**
American-Arab Anti-Discrimination Committee
1705 DeSales Street, N.W., Suite 500
Washington, DC 20036
202-244-2990
skhalaf@adc.org

/s/ Andrew Bauer
Andrew Bauer
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-7669
Andrew.Bauer@arnoldporter.com

/s/ John A. Freedman
John A. Freedman
David P. Gersch**
Peter T. Grossi, Jr**
R. Stanton Jones**
Eric A. Rubel**
David J. Weiner**
Robert N. Weiner**
Barbara H. Wootton**
Daniel Jacobson**
Elisabeth S. Theodore**
Caroline D. Kelly**
Christine G. Lao-Scott**
Jay Z. Leff**
Chase R. Raines**
Dylan S. Young**
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001-3743
(202) 942-5000
John.Freedman@arnoldporter.com

Nicholas Katz**
CASA de Maryland
8151 15th Avenue
Hyattsville, MD 20783
(240) 491-5743
nkatz@wearecasa.org

*Attorneys for NYIC Plaintiffs*

* admitted *pro hac vice*
** designates *pro hac vice* application pending or forthcoming.
*** Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R. 49(c)(3).