# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, *et al.*,<br><br>  Defendants. | No. 1:18-cv-2921 (JMF) |
| NEW YORK IMMIGRATION COALITION, *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, *et al.*,<br><br>  Defendants. | No. 1:18-cv-5025 (JMF) |

**DEFENDANTS' INITIAL DISCLOSURES**

In accordance with the Court's order on the record on July 3, 2018, and entered on the docket on July 5, 2018, Defendants United States Department of Commerce, Bureau of the Census, Wilbur L. Ross, Jr., in his official capacity as Secretary of Commerce, and Ron S. Jarmin, in his official capacity as performing the non-exclusive functions and duties of the Director of the U.S. Census, disclose under Federal Rule of Civil Procedure 26(a)(1):

## I.     Witnesses

Defendants maintain their position that this challenge to a final agency action is properly reviewed, if at all, on the basis of the administrative record produced by the agency. Accordingly, at this time there are no fact witnesses Defendants intend to use to support their claims or defenses, other than for impeachment.   If this case proceeds to trial, Defendants reserve the right to call any individuals identified in Plaintiffs' initial disclosures or discovery responses or any individuals deposed by any party.  Also, should the Court or the plaintiffs question the authenticity of the administrative record, Defendants reserve the right to call a witness to authenticate the administrative record.

## II.    Documents

Defendants may use the following documents in their possession, custody, or control to support their claims or defenses, but not solely for impeachment:

- Complete administrative record upon which the Secretary of Commerce based his decision to reinstate a question concerning citizenship on the 2020 Decennial Census, filed on June 8, 2018, *see* ECF No. 173, *New York v. U.S. Dep't of Commerce*, No. 18-cv-2921 (JMF)

- Supplement to administrative record, filed on June 21, 2018, *see* ECF No. 189, *New York v. U.S. Dep't of Commerce*, No. 18-cv-2921 (JMF)

## III.   Damages

Not applicable. Defendants are not claiming damages in these cases.

## IV.    Insurance

There is no insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in these actions or to indemnify or reimburse for payments made to satisfy the judgment.

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers St., 3rd Floor
New York, NY 10007

CHAD A. READLER
Acting Assistant Attorney General

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director, Federal Programs Branch

CARLOTTA P. WELLS
Assistant Director, Federal Programs Branch

*/s/    Kate Bailey*
KATE BAILEY
GARRETT COYLE
STEPHEN EHRLICH
CAROL FEDERIGHI
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel.:  (202) 514-9239
Email:  kate.bailey@usdoj.gov

*Counsel for Defendants*

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW YORK IMMIGRATION COALITION, *et. al*,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, *et. al*,<br><br>Defendant. | Civil Action No. 1:18-cv-05025-JMF<br>          [r: 1:18-cv-02921-JMF]<br><br>Hon. Jesse M. Furman<br><br>**PLAINTIFFS' INITIAL DISCLOSURES PURSUANT TO FRCP 26(A)(1)** |

## PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Plaintiffs New York Immigration Coalition ("NYIC"), Casa de Maryland ("Casa"), American-Arab Anti-Discrimination Committee ("ADC"), ADC Research Institute, and Make the Road New York ("MRNY") (collectively, "Plaintiffs") hereby make the following initial disclosures. Plaintiffs have made a reasonable and good faith effort to prepare the disclosures set forth herein. However, Plaintiffs have not completed their review of the evidence in connection with this case. Consequently, other potential witnesses, subjects of information, and/or categories of documents within the scope of these disclosures may be identified as discovery proceeds and as the case develops. Therefore, Plaintiffs reserve the right to modify, amend, or supplement these disclosures at a later time as appropriate, and at any time before trial in this matter.

These disclosures are made without waiving: (i) the right to object on the grounds of competency, the attorney-client privilege, attorney work-product protections, undue burden, relevancy, materiality, hearsay or any other proper ground; (ii) the right to object to the

1

production or use of any information, for any purpose, in whole or in part, in any proceeding in this or any other action; or (iii) the right to object on any and all grounds, at any time, to any other discovery request or proceeding involving or relating to the subject matter of these disclosures.

I.    **Rule 26(a)(1)(A)(i): Individuals Likely to Have Discoverable Information that Plaintiffs May Use to Support Their Claims or Defenses**

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i), the chart below sets forth (1) the individuals, not including expert witnesses, that Plaintiffs have identified who are likely to have discoverable information that Plaintiffs may use to support their claims; and (2) to the extent reasonably determinable by Plaintiffs at this time, the subjects of the information about which these individuals may have knowledge. Plaintiffs have attempted to provide complete information regarding the subjects about which the identified individual has knowledge, but the individual may have knowledge of subjects in addition to, or other than, those listed. References to an individual's

employment title refers either to the individual's current or prior title.

A.    **Plaintiffs**

| Name | Title | Subject Matter | Contact Information |
|------|-------|----------------|---------------------|
| Steven K. Choi | Executive Director, New York Immigration Coalition | Mr. Choi is likely to have information about NYIC's Census education and outreach efforts; Census-guided funding streams; and organizational mission, programs, services, and membership. | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| Elizabeth (Betsy) Plum | Vice-President of Policy, New York | Ms. Plum is likely to have information about NYIC's Census | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 |

| | Immigration Coalition | education and outreach efforts; Census-guided funding streams; and organizational mission, programs, services, and membership. | 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
|---|---|---|---|
| Elizabeth Ouyang | Coordinator, New York Counts 2020, New York Immigration Coalition | Ms. Ouyang is likely to have information about NYIC's Census education and outreach efforts. | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| Lindolfo Carballo | Director of Workforce Development, Education, and Employment, CASA de Maryland | Mr. Carballo is likely to have information about CASA's outreach effort made in 2010, its planning for the Census outreach effort in 2020, any anticipated diversion of its resources because of the increased effort, and the increased fear of interactions with the government on the part of its communities. | c/o Arnold & Porter Kaye Scholer LLP 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| George Escobar | Senior Director of Health and Human Services, CASA de Maryland | Mr. Escobar is likely to have information about CASA's outreach effort made in 2010, its planning for the Census outreach effort in 2020, any anticipated diversion of its resources because of the increased effort, and the increased fear of interactions with the government on the part of its | c/o Arnold & Porter Kaye Scholer LLP 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |

| | | communities. | |
|---|---|---|---|
| Kimberley Propeack | Chief of Politics and Communications, CASA de Maryland | Ms. Propeack is likely to have information about CASA's outreach effort made in 2010, its planning for the Census outreach effort in 2020, any anticipated diversion of its resources because of the increased effort, and the increased fear of interactions with the government on the part of its communities. | c/o Arnold & Porter Kaye Scholer LLP 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| Gustavo Torres | Executive Director, CASA de Maryland | Mr. Torres is likely to have information about CASA's planning for the Census outreach effort in 2020, any anticipated diversion of its resources because of the increased effort, and the increased fear of interactions with the government on the part of its communities. | c/o Arnold & Porter Kaye Scholer LLP 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| Samer Khalaf | President, American-Arab Anti-Discrimination Committee | Mr. Khalaf is likely to have information about ADC's Census education and outreach efforts; and organizational mission, programs, and membership; and the anticipated diversion of its resources because of the increased effort, because of the | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |

| | | increased fear of interactions with the government on the part of its communities. | |
|---|---|---|---|
| Abed A. Ayoub | National Legal and Policy Director of the American-Arab Anti-Discrimination Committee | Mr. Ayoub is likely to have information about ADC's Census education and outreach efforts; and organizational mission, programs, and membership; and the anticipated diversion of its resources because of the increases in this effort because of the increased fear of interactions with the government on the part of its communities. Mr. Ayoub is also likely to have information about reports from ADC members who have expressed fear and concern about census participation because of the addition of the citizenship question. | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| Nabil Mohamad | Vice-President of the American-Arab Anti-Discrimination Committee | Mr. Mohamad is likely to have information about ADC's Census education and outreach efforts; and organizational mission, programs, and membership; and the anticipated diversion of its resources because of the increases in this | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |

| | | effort because of the increased fear of interactions with the government on the part of its communities.. | |
|---|---|---|---|
| ADC Research Institute | Same individuals as named for ADC | Mr. Khalaf, Mr. Ayoub and Mr. Mohamad are likely to have information about ADCRI's Census education and outreach efforts, and organizational mission. | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| Javier Valdes | Co-Executive Director, Make the Road New York | Mr. Valdes is likely to have information about MRNY's Census education and outreach efforts; Census-guided funding streams; organizational mission, programs, services, and membership. | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| Daniel Altschuler | Director of Civic Engagement and Research, Make the Road New York | Mr. Altschuler is likely to have information about MRNY's Census education and outreach efforts; Census-guided funding streams; organizational mission, programs, services, and membership. | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| Yaritza Mendez | Immigration & Civil Rights Coordinator, Make the Road New York | Ms. Mendez is likely to have information about MRNY's Census education and outreach efforts and organizational mission, programs, services, and | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |

| | | | |
|---|---|---|---|
| | | membership. | |
| Natalia Aristizabal | Co-Director of Organizing, Make the Road New York | Ms. Aristizabal is likely to have information about MRNY's Census education and outreach efforts; Census-guided funding streams; and organizational mission, programs, services, and membership. | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |

Other parties and individuals are also likely to have discoverable information that Plaintiffs may use to support their claims. These include the individuals listed below. In addition to those individuals, Plaintiffs expressly incorporate into these Initial Disclosures all of the individuals and entities that have been identified in the initial disclosures or other discovery responses of any other party in this action or related actions as individuals or entities likely to have discoverable information.

**B.  Defendants**

| Name | Title | Subject Matter | Contact Information |
|---|---|---|---|
| Brooke Alexander | Senior Advisor, Department of Commerce | Mr. Alexander is likely to have information regarding the motivation for adding the citizenship question to the Decennial Census, the necessity of Decennial Census data for VRA enforcement, the process by which the decision was | c/o Department of Justice |

7

| | | made to add the citizenship question to the Decennial Census, the normal process and procedures for adding questions to the Decennial Census, communications outside the Commerce Department regarding the citizenship question, the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts, and the impact of undercounts on other federal programs and political apportionment. | |
|---|---|---|---|
| Karen Dunn Kelly | Under Secretary of Commerce for Economic Affairs, Commerce Department | Ms. Dunn Kelly is likely to have information regarding the motivation for adding the citizenship question to the Decennial Census, the necessity of Decennial Census data for VRA enforcement, the process by which the decision was made to add the citizenship question | c/o Department of Justice |

| | | | |
|---|---|---|---|
| | | to the Decennial Census, the normal process and procedures for adding questions to the Decennial Census, communications outside the Commerce Department regarding the citizenship question, the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts, and the impact of undercounts on other federal programs and political apportionment. | |
| Brian Lenihan | Senior Advisor to the Chief of Staff to the Secretary of Commerce; Former Acting Assistant Secretary for Legislative and Intergovernmental Affairs | Mr. Lenihan is likely to have information regarding the motivation for adding the citizenship question to the Decennial Census. | c/o Department of Justice |
| Kevin Manning | Senior Public Affairs Coordinator, Department of Commerce | Mr. Manning is likely to have information regarding the motivation for adding the citizenship question to the Decennial Census. | c/o Department of Justice |

| Wilbur Ross | Secretary of Commerce | Mr. Ross is likely to have information regarding the motivation for adding the citizenship question to the Decennial Census, the necessity of Decennial Census data for VRA enforcement, the process by which the decision was made to add the citizenship question to the Decennial Census, the normal process and procedures for adding questions to the Decennial Census, communications outside the Commerce Department regarding the citizenship question, the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts, and the impact of undercounts on other federal programs and political apportionment. | c/o Department of Justice |
| Wendy Teramoto | Chief of Staff to Secretary of Commerce | Ms. Teramoto is likely to have information | c/o Department of Justice |

| | Wilbur Ross | regarding communications within and outside the Commerce Department regarding the citizenship question. | |
|---|---|---|---|
| Michael Walsh | Deputy General Counsel, Department of Commerce | Mr. Walsh is likely to have information regarding the motivation for adding the citizenship question to the Decennial Census, the necessity of Decennial Census data for VRA enforcement, the process by which the decision was made to add the citizenship question to the Decennial Census, the normal process and procedures for adding questions to the Decennial Census, communications outside the Commerce Department regarding the citizenship question, the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts, and the impact of | c/o Department of Justice |

| | | undercounts on other federal programs and political apportionment. | |
|---|---|---|---|
| John Abowd | Chief Scientist and Associate Director for Research and Methodology, Census Bureau | Mr. Abowd is likely to have information regarding the motivation for adding the citizenship question to the Decennial Census, the necessity of Decennial Census data for VRA enforcement, the process by which the decision was made to add the citizenship question to the Decennial Census, the normal process and procedures for adding questions to the Decennial Census, communications outside the Commerce Department regarding the citizenship question, the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts, and the impact of undercounts on other federal | c/o Department of Justice |

| | | programs and political apportionment. | |
|---|---|---|---|
| Karen Battle | Division Chief, Population Division, Census Bureau | Ms. Battle is likely to have information regarding communications within and outside the Commerce Department regarding the citizenship question, and the decision making process regarding the same. | c/o Department of Justice |
| Michael Berning | Acting Chief, Center for Administrative Records Research and Applications, Census Bureau | Mr. Berning is likely to have information regarding the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts, and the process by which the decision to add the citizenship question to the Decennial Census was made. | c/o Department of Justice |
| Robert Bernstein | Stakeholder Relations Staff, Decennial Communications Coordination Office, Census Bureau | Mr. Bernstein is likely to have information regarding communications within and outside the Commerce Department regarding the citizenship question, and the decision making process regarding | c/o Department of Justice |

| | | the same. | |
|---|---|---|---|
| Kaile Bower | Chief, Integrated Partnership and Communications Branch, Census Bureau | Ms. Bower is likely to have information regarding the normal process and procedures for adding questions to the Decennial Census, the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts, and the process by which the decision to add the citizenship question to the Decennial Census was made. | c/o Department of Justice |
| Steven Buckner | Assistant Director of Communications, Census Bureau | Mr. Buckner is likely to have information regarding the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts, and the process by which the decision to add the citizenship question to the Decennial Census was made. | c/o Department of Justice |
| Cheryl V. Chambers | Chief, Internal Communications Staff, Decennial Communications Coordination Office, Census Bureau | Ms. Chambers is likely to have information regarding communications within and outside the Commerce | c/o Department of Justice |

| | | Department regarding the citizenship question, and the decision making process regarding the same. | |
|---|---|---|---|
| Jennifer Hunter Childs | Statistician, Census Bureau | Ms Childs is likely to have information regarding the normal process and procedures for adding questions to the Decennial Census, the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts and the process by which the decision to add the citizenship question to the Decennial Census was made. | c/o Department of Justice |
| Michael C. Cook Sr. | Division Chief, Public Information Office, Census Bureau | Mr. Cook is likely to have information regarding communications within and outside the Commerce Department regarding the citizenship question, and the decision making process regarding the same. | c/o Department of Justice |
| Joanne Buenzli Crane | Associate Director for Administration and Chief Financial Officer, | Ms. Crane is likely to have information regarding motivations of the defendants in | c/o Department of Justice |

| | Census Bureau | deciding to add the citizenship question to the Decennial Census and the process by which the decision to add the citizenship question to the Decennial Census was made. | |
|---|---|---|---|
| Aref N. Dajani | Mathematical Statistician Center for Disclosure Avoidance Research, Census Bureau | Mr. Dajani is likely to have information regarding how providing the citizenship data at the block level would affect disclosure avoidance plans for the 2020 Census and to what extent this was considered prior to any decision that was made on adding the citizenship question. | c/o Department of Justice |
| James Dinwiddle | Office of the Associate Director for Decennial Census Programs, Census Bureau | Mr. Dinwiddle is likely to have information regarding communications within and outside the Commerce Department regarding the citizenship question, and the decision making process regarding the same. | c/o Department of Justice |
| John Eltinge | Assistant Director for Research and Methodology, Census Bureau | Mr. Eltinge is likely to have information regarding the normal process and | c/o Department of Justice |

| | | procedures for adding questions to the Decennial Census, the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts and the process by which the decision to add the citizenship question to the Decennial Census was made. | |
|---|---|---|---|
| Naomi Evangelista | Chief, Media Relations Branch, Public Information Office, Census Bureau | Ms. Evangelista is likely to have information regarding communications within and outside the Commerce Department regarding the citizenship question, and the decision making process regarding the same. | c/o Department of Justice |
| Albert Fontenot | Associate Director for Decennial Programs, Census Bureau | Mr. Fontenot is likely to have information regarding the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts, and the process by which the decision to add the citizenship question | c/o Department of Justice |

| | | to the Decennial Census was made. | |
|---|---|---|---|
| Simson L. Garfinkel | Chief, Center for Disclosure Avoidance Research, Census Bureau | | c/o Department of Justice |
| Misty Heggeness | Branch Chief, Social, Economic, and Housing Statistics Division, Census Bureau | Ms. Heggeness is likely to have information regarding the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts, and the process by which the decision to add the citizenship question to the Decennial Census was made. | c/o Department of Justice |
| Ron Jarmin | Acting Director, Census Bureau | Mr. Jarmin is likely to have information regarding the motivation for adding the citizenship question to the Decennial Census, the necessity of Decennial Census data for VRA enforcement, the process by which the decision was made to add the citizenship question to the Decennial Census, the normal process and procedures for adding questions to the Decennial | c/o Department of Justice |

| | | Census, communications outside the Commerce Department regarding the citizenship question, the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts, and the impact of undercounts on other federal programs and political apportionment. | |
|---|---|---|---|
| Christa Jones | Deputy Chief, Congressional and Intergovernmental Affairs at US Census Bureau | Ms. Jones is likely to have information regarding the motivation for adding the citizenship question to the Decennial Census and the normal process and procedures for adding questions to the Decennial Census. | c/o Department of Justice |
| Shawn Klimek | Director of Research, Center for Economic Studies, Census Bureau | Mr. Klimek is likely to have information regarding the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts, and the process by | c/o Department of Justice |

| | | which the decision to add the citizenship question to the Decennial Census was made. | |
|---|---|---|---|
| Francine Krasowska | Customer Experience Analyst, Center for New Media & Promotion, Census Bureau | Ms. Krasowka is likely to have information regarding communications within and outside the Commerce Department regarding the citizenship question, and the decision making process regarding the same. | c/o Department of Justice |
| Enrique Lamas | Deputy Director and Chief Operating Officer, Census Bureau | Mr. Lamas is likely to have information regarding the motivation for adding the citizenship question to the Decennial Census, the necessity of Decennial Census data for VRA enforcement, the process by which the decision was made to add the citizenship question to the Decennial Census, the normal process and procedures for adding questions to the Decennial Census, communications outside the Commerce Department | c/o Department of Justice |

| | | regarding the citizenship question, the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts, and the impact of undercounts on other federal programs and political apportionment. | |
|---|---|---|---|
| Tim Olson | Director for Field Operations, Census Bureau | Mr. Olson is likely to have information regarding communications within and outside the Commerce Department regarding the citizenship question, and the decision making process regarding the same. | c/o Department of Justice |
| Eloise Parker | Assistant Director, Demographic Programs, Census Bureau | Ms. Parker is likely to have information regarding the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts, and the process by which the decision to add the citizenship question to the Decennial Census was made. | c/o Department of Justice |
| Sonya Rastogi | Assistant Center | Ms. Porter is likely | c/o Department of |

| Porter | Chief for Research, Center for Administrative Records Research and Applications, Census Bureau | to have information regarding the normal process and procedures for adding questions to the Decennial Census, the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts and the process by which the decision to add the citizenship question to the Decennial Census was made. | Justice |
| --- | --- | --- | --- |
| Roberto Ramirez | Branch Chief, Ethnicity and Ancestry Statistics Branch, Population Division, Census Bureau | Mr. Ramirez is likely to have information regarding the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts, and the process by which the decision to add the citizenship question to the Decennial Census was made. | c/o Department of Justice |
| Burton Reist | Decennial Communications & Stakeholder Relations, Census Bureau | Mr. Reist is likely to have information regarding motivations of the defendants in deciding to add the citizenship question to the Decennial Census and the | c/o Department of Justice |

| | | process by which the decision to add the citizenship question to the Decennial Census was made. | |
|---|---|---|---|
| Moniqua L. Roberts-Gray | Deputy Chief, Media Relations, Public Information Office, Census Bureau | Ms. Roberts-Gray is likely to have information regarding communications within and outside the Commerce Department regarding the citizenship question, and the decision making process regarding the same. | c/o Department of Justice |
| James Rockas | Former press Secretary and Deputy Director of Public Affairs, Department of Commerce | Mr. Rockas is likely to have information regarding the motivation for adding the citizenship question to the Decennial Census. | |
| Jennifer C. Shopkorn | Senior Advisor, Communications Directorate, Census Bureau | Ms. Shopkorn is likely to have information regarding communications within and outside the Commerce Department regarding the citizenship question, and the decision making process regarding the same. | c/o Department of Justice |
| Tara Tadlock | Congressional Affairs Office | Ms. Tadlock is likely to have | c/o Department of Justice |

| | Branch Chief, Office of Congressional and Intergovernmental Affairs, Census Bureau | information regarding communications within and outside the Commerce Department regarding the citizenship question, and the decision making process regarding the same. | |
|---|---|---|---|
| Christine Taylor | Assistant Division Chief, Public Information Office, Census Bureau | Ms. Taylor is likely to have information regarding communications within and outside the Commerce Department regarding the citizenship question, and the decision making process regarding the same. | c/o Department of Justice |
| Neilan Timberlake | Program Analyst, Stakeholder Relations Staff, Decennial Communications Coordination Office, Census Bureau | Ms. Timberlake is likely to have information regarding communications within and outside the Commerce Department regarding the citizenship question, and the decision making process regarding the same. | c/o Department of Justice |
| James Treat | Assistant Director of Decennial Census Programs Directorate, Census Bureau | Mr. Treat is likely to have information regarding the impact of the citizenship question of responsiveness among certain | c/o Department of Justice |

| | | populations, foreseeable undercounts, and the process by which the decision to add the citizenship question to the Decennial Census was made. | |
|---|---|---|---|
| Victoria Velkoff | Chief, American Community Survey Office, U.S. Census Bureau | Ms. Velkoff is likely to have information regarding the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts, and the process by which the decision to add the citizenship question to the Decennial Census was made. | c/o Department of Justice |
| James Whitehorne | Chief, Redistricting Data Program, Census Bureau | Mr. Whitehorne is likely to have information regarding the necessity of Decennial Census data for VRA enforcement. | c/o Department of Justice |
| Lisa Wolfisch | Acting Director, Center for New Media & Promotion, Census Bureau | Ms. Wolfish is likely to have information regarding communications within and outside the Commerce Department regarding the citizenship question, and the decision making | c/o Department of Justice |

|  |  | process regarding the same. |  |

### C.  Non-Parties

| Name | Title | Subject Matter | Contact Information |
|------|-------|----------------|---------------------|
| Fahd Ahmed | Executive Director, Desis Rising Up and Moving ("DRUM") | Mr. Ahmed is likely to have information about DRUM's Census education and outreach efforts; and organizational mission, programs and services. | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| Steve Bannon | Former White House Chief Strategist | Mr. Bannon is likely to have information around the motivations of the defendants in adding the citizenship question to the Decennial Census, and the impact of undercounts on other federal programs and political apportionment. |  |
| Robert Berman | Deputy Chief, Voting Section, Civil Rights Division, Department of Justice | Mr. Berman is likely to have information around the motivations of the defendants in adding the citizenship question to the Decennial Census, as well as the necessity of Decennial Census date to VRA enforcement. | c/o Department of Justice |
| Lisa Blumerman | Former Acting Associate Director for 2020 Census, Census Bureau | Ms. Blumerman is likely to have information regarding the decision to add the citizenship | Lisa Blumerman |

| | | question to the Decennial Census, the necessity of Decennial Census data for VRA enforcement, the process by which the decision was made to add the citizenship question to the Decennial Census, the normal process and procedures for adding questions to the Decennial Census, communications outside the Commerce Department regarding the citizenship question, the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts, and the impact of undercounts on other federal programs and political apportionment. | |
|---|---|---|---|
| Eric Branstad | Former Senior White House Advisor, Department of Commerce | Mr. Branstad is likely to have information regarding the motivation for adding the citizenship question to the Decennial Census, the necessity of Decennial Census data for VRA enforcement, the the process by which the | Eric Branstad |

| | | | |
|---|---|---|---|
| | | decision was made to add the citizenship question to the Decennial Census, the normal process and procedures for adding questions to the Decennial Census, communications outside the Commerce Department regarding the citizenship question, the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts, and the impact of undercounts on other federal programs and political apportionment. | |
| Andrew Bremberg | Assistant to the President and the Director of the Domestic Policy Council | Mr. Bremberg is likely to have information around the motivations of the defendants in adding the citizenship question to the Decennial Census, and the impact of undercounts on other federal programs and political apportionment. | |
| Sarah Brinegar | Social Science Analyst, Civil Rights Division, Department of Justice | Ms. Brinegar is likely to have information around the motivations of the defendants in adding the citizenship | c/o Department of Justice |

| | | question to the Decennial Census, as well as the necessity of Decennial Census date to VRA enforcement. | |
|---|---|---|---|
| Steven Camarota | Director of Research, Center for Immigration Studies (CIS) | Mr. Camarota is likely to have information around the motivations of the defendants in adding the citizenship question to the Decennial Census, and the impact of undercounts on other federal programs and political apportionment. | Steven Camarota |
| Carlyn Cowen | Chief Policy & Public Affairs Officer, Chinese American Planning Council ("CPC") | Ms. Cowen is likely to have information about CPC's Census education and outreach efforts; Census-guided funding streams; and organizational mission, programs and services. | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| Marlenis de los Santos | N/A | Ms. de los Santos is likely to have information about the state and political subdivision in which she resides and the facilities, programs, and services that she uses that may benefit from Census-guided funding. | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| Arthur E. Gary | General Counsel, Justice Management Division, Department of Justice | Mr. Gary is likely to have information around the motivations of the defendants in adding the citizenship | c/o Department of Justice |

| | | question to the decennial census, as well as the necessity of decennial census date to VRA enforcement. | |
|---|---|---|---|
| John Gore | Acting Assistant Attorney General John Gore, Civil Rights Division, Department of Justice | Mr. Gore is likely to have information around the motivations of the defendants in adding the citizenship question to the Decennial Census, as well as the necessity of Decennial Census date to VRA enforcement. | c/o Department of Justice |
| Robert Groves | Former Director, Census Bureau | Mr. Groves is likely to have information on the impact of the citizenship question on responsive rates, the history of the census bureau's analysis of including the citizenship question, and the normal practices of the Census Bureau in adding a question to the Decennial Census. | Robert Groves |
| Hermann Habermann | Former Deputy Director, Census Bureau | Mr. Haberman is likely to have information on the impact of the citizenship question on responsive rates, the history of the census bureau's analysis of including the citizenship question, and the normal practices of the Census Bureau in | Hermann Habermann |

| | | adding a question to the Decennial Census. | |
|---|---|---|---|
| Israel ("Izzy") Hernandez | Former Acting Undersecretary of International Trade, Department of Commerce | Mr. Hernandez is likely to have information regarding the motivation for adding the citizenship question to the Decennial Census. | Israel ("Izzy") Hernandez |
| T. Christian Herren | Chief, Voting Section, Civil Rights Division, Department of Justice | Mr. Herron is likely to have information around the motivations of the defendants in adding the citizenship question to the Decennial Census, as well as the necessity of Decennial Census date to VRA enforcement. | c/o Department of Justice |
| Rama Issa-Ibrahim | Executive Director, Arab-American Association of New York ("AAANY") | Ms. Issa-Ibrahim is likely to have information about AAANY's Census education and outreach efforts; and organizational mission, programs and services. | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| Steve King | United States Representative, 4th District of Iowa | Mr. King is likely to have information around the motivations of the defendants in adding the citizenship question to the Decennial Census. | |
| Ditas Kitague | California Census Coordinator | Ms. Kitague is likely to have information on the effects on response rates of adding a citizenship question to Census. | |
| Kris Kobach | Secretary of | Mr. Kobach is likely | |

| | State of Kansas | to have information around the motivations of the defendants in adding the citizenship question to the Decennial Census, and the impact of undercounts on other federal programs and political apportionment. | |
|---|---|---|---|
| Linda Lee | Executive Director, Korean Community Services of Metropolitan New York ("KCSMNY") | Ms. Lee is likely to have information about KCSMNY's Census-guided funding streams; and organizational mission, programs and services. | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| Mae Lee | Chinese Progressive Association ("CPA") | Ms. Lee is likely to have information about CPA's Census education and outreach efforts; Census-guided funding streams; and organizational mission, programs and services. | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| Perla Lopez | N/A | Ms. Lopez is likely to have information about the state and political subdivision in which she resides and the facilities, programs, and services that she uses that may benefit from Census-guided funding. | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| Ray López | Director of Programs and Director of Environmental Health, LSA | Mr. Lopez is likely to have information about LSA's Census-guided funding streams; and | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 |

| | Family Health Services ("LSA") | organizational mission, programs and services. | (202) 942-5000 |
|---|---|---|---|
| Aracelis Lucero | Executive Director, Masa | Ms. Lucero is likely to have information about Masa's Census education and outreach efforts; Census-guided funding streams; and organizational mission, programs and services. | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| Alejandra Martin | N/A | Ms. Martin is likely to have information about the state and political subdivision in which she resides and the facilities, programs, and services that she uses that may benefit from Census-guided funding. | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| Laura McQuade | President and Chief Executive Officer, Planned Parenthood of New York City ("PPNYC") | Ms. McQuade is likely to have information about KCSMNY's Census-guided funding streams; and organizational mission, programs and services. | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| Larry McReynolds | Executive Director, Family Health Centers at NYU Langone | Mr. McReynolds is likely to have information about Family Health Centers at NYU Langone's Census-guided funding streams; and organizational mission, programs and services. | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| Stephen Miller | Senior Advisor to the President | Mr. Miller is likely to have information | |

| | | around the motivations of the defendants in adding the citizenship question to the Decennial Census, and the impact of undercounts on other federal programs and political apportionment. | |
| --- | --- | --- | --- |
| Amy O'Hara | Former Head of Census Bureau's Center for Administrative Records Research and Applications | Ms. O'Hara is likely to have information on Census' ability to use administrative match data to fulfill the equest for citizenship data in order to help enforce the VRA. | |
| Ben Overholt | Statistician, Civil Rights Division, Department of Justice | Mr. Overholt is likely to have information around the motivations of the defendants in adding the citizenship question to the Decennial Census, as well as the necessity of Decennial Census date to VRA enforcement. | c/o Department of Justice |
| John Park | Executive Director, MinKwon Center for Community Action ("MinKwon") | Mr. Park is likely to have information about MinKwon's Census education and outreach efforts; Census-guided funding streams; and organizational mission, programs and services. | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| Nancy Potok | Chief statistician of the United States, within the Office of | Ms. Potok is likely to have information regarding the necessity of | |

| | Management and Budget | Decennial Census data for VRA enforcement, the normal process and procedures for adding questions to the Decennial Census, communications outside the Commerce Department regarding the citizenship question, the impact of the citizenship question of responsiveness among certain populations, foreseeable undercounts, and the impact of undercounts on other federal programs and political apportionment. | |
|---|---|---|---|
| William Spisak | Program Director, Chhaya Community Development Corporation ("Chhaya") | Mr. Spisak is likely to have information about Chhaya's Census education and outreach efforts; Census-guided funding streams; and organizational mission, programs and services. | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 (202) 942-5000 |
| Dan Torres | Director of Immigrant Integration | Mr. Torres is likely to have information on the effects on response rates of adding a citizenship question to Census. | |
| Yatziri Tovar | N/A | Ms. Tovar is likely to have information about the state and political subdivision in which she resides | c/o Arnold & Porter Kaye Scholer LLP (212) 607-3300 601 Massachusetts Ave, N.W. Washington, DC 20001-3743 |

| | | and the facilities, programs, and services that she uses that may benefit from Census-guided funding. | (202) 942-5000 |
|---|---|---|---|
| Arturo Vargas | Executive Director of NALEO Educational Fund | Mr. Vargas is likely to have information on the effects on response rates of adding a citizenship question to Census. | |
| Rebecca Wertz | Deputy Chief, Voting Section, Civil Rights Division, Department of Justice | Ms. Wertz is likely to have information around the motivations of the defendants in adding the citizenship question to the Decennial Census, as well as the necessity of Decennial Census date to VRA enforcement. | c/o Department of Justice |

## II.    FRCP 26(a)(1)(A)(ii): Documents

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii), Plaintiffs identify the following categories and

locations of documents as likely to contain information relevant to disputed matters in this case

that Plaintiffs may use to support their claims, unless solely for impeachment. These disclosures

relate solely to documents within Plaintiffs' possession, custody, or control. The categories

below reflect those that Plaintiffs have identified as of the date of this disclosure and may not

reflect all categories of documents in Plaintiffs' possession, custody, or control. Plaintiffs reserve

the right to supplement or amend these categories. By setting forth this information, Plaintiffs do

not admit the relevance or admissibility of any category or any document in any category; nor do

Plaintiffs acknowledge that any request for documents comprising all or part of any of these

categories would be reasonably calculated to lead the discovery of admissible evidence in this

case, or that the request is otherwise appropriate. Plaintiffs expressly reserve the right to object to and/or withhold production of any documents in any of the categories set forth below. These documents are in the form of electronically stored information or hard copy documents. Plaintiffs reserve the right to use any relevant evidence in support of its claims, regardless of the categories listed below.

### A. **Categories of Documents**

- Documents related to Plaintiffs' Census education and outreach efforts and the effect of the citizenship question on those efforts

- Documents related to Plaintiffs' Census-guided funded streams

- Documents related to Plaintiffs' organizational missions, programs, membership, and services, and the immigrant communities of color that Plaintiffs serve.

### B. **Location of Documents**

The above categories of documents include Plaintiffs' electronic and hard-copy documents. The electronic documents are located on the computer systems for Plaintiffs and on individual media. Documents potentially related to Plaintiffs' complaints are located at Plaintiffs' offices, whose addresses are as follows:

| Plaintiff | Location of Documents |
|---|---|
| New York Immigration Coalition | 131 W 33rd Street, Ste 610, New York, NY 10001 |
| Casa de Maryland | 8151 15th Ave Langley Park, MD 20783 |
| American-Arab Discrimination Committee | 1705 DeSales St., NW, Suite 500, Washington DC 20036 |
| ADC Research Institute | 1705 DeSales St., NW, Suite 500, Washington DC 20036 |
| Make the Road New York | 301 Grove Street, Brooklyn, NY 11237 |

Plaintiffs' investigation is ongoing. If, as the case develops, Plaintiffs identify additional documents or categories of documents in their possession, custody or control that supports their claims, Plaintiffs will identify them in supplemental disclosures as required under Fed. R. Civ. P. 26(e).

**III.     Rule 26(a)(1)(A)(iii): Computation of Plaintiffs' Damages**

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii), other than fees and costs to which it may be entitled under applicable law, Plaintiffs do not seek damages for this matter from Defendants at this time.

**IV.     Rule 26(a)(1)(A)(iv): Insurance Policies**

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iv), Plaintiffs have no applicable insurance agreements to disclose.

Dated: July 23, 2018

ARNOLD & PORTER KAYE SCHOLER LLP
AMERICAN CIVIL LIBERTIES UNION

By:    /s/ John A. Freedman

Dale Ho                                                   Andrew Bauer
David Hausman[+]                                          Arnold & Porter Kaye Scholer LLP
American Civil Liberties Union Foundation                 250 West 55th Street
125 Broad St.                                             New York, NY 10019-9710
New York, NY 10004                                        (212) 836-7669
(212) 549-2693                                            Andrew.Bauer@arnoldporter.com
dho@aclu.org
dhausman@aclu.org                                         John A. Freedman
                                                          David P. Gersch*
Sarah Brannon[+**]                                        Peter T. Grossi, Jr*

Davin Rosborough**
Ceridwen Cherry[+]
American Civil Liberties Union Foundation
915 15th Street, NW
Washington, DC 20005-2313
202-675-2337
sbrannon@aclu.org
drosborough@aclu.org
ccherry@aclu.org

Arthur N. Eisenberg
Christopher T. Dunn
Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org

Samer E. Khalaf*
American-Arab Anti-Discrimination Committee
1705 DeSales Street, N.W., Suite 500
Washington, DC 20036
202-244-2990
skhalaf@adc.org

Nicholas Katz*
CASA de Maryland
8151 15th Avenue
Hyattsville, MD 20783
(240) 491-5743
nkatz@wearecasa.org

R. Stanton Jones*
Eric A. Rubel*
David J. Weiner*
Robert N. Weiner*
Barbara H. Wootton*
Elisabeth S. Theodore*
Daniel F. Jacobson*
Caroline D. Kelly[+]
Christine G. Lao-Scott*
Jay Z. Leff[+]
Chase R. Raines[+]
Dylan S. Young[+]
Arnold & Porter Kaye Scholer LLP
Massachusetts Avenue, N.W.
Washington, DC 20001-3743
(202) 942-5000
John.Freedman@arnoldporter.com

+ admitted pro hac vice
* designates pro hac vice application forthcoming.
** Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R. 49(c)(3).

*Attorneys for Plaintiffs*

# EXHIBIT 3

**Archived:** Wednesday, August 29, 2018 2:12:37 PM
**From:** Ehrlich, Stephen (CIV)
**Sent:** Mon, 13 Aug 2018 09:00:54
**To:** Freedman, John A.; zzz.External.DHo@aclu.org; zzz.External.SBrannon@aclu.org; zzz.External.PGrossman@nyclu.org; Bauer, Andrew
**Cc:** Bailey, Kate (CIV); Coyle, Garrett (CIV); Federighi, Carol (CIV); Halainen, Daniel J. (CIV); Kopplin, Rebecca M. (CIV); Tomlinson, Martin M. (CIV); Goldstein, Elena; Colangelo, Matthew; Saini, Ajay
**Subject:** NYIC v. U.S. Dep't of Commerce, 18-cv-5025
**Importance:** Normal

---

Counsel,

We anticipate serving Rule 45 subpoenas on four members of Make the Road New York: Perla Lopez, Yatziri Tovar, Marlenis de los Santos, and Alejandra Martin.  *See NYIC, et al. v. U.S. Department of Commerce, et al.*, Dkt. No. 18-cv-5025 (S.D.N.Y.), ECF No. 49-3.  Please confirm that you represent them and are authorized to accept service of these subpoenas on their behalf.  Otherwise, please provide personal addresses and contact information for these individuals so they may be properly served.

Additionally, please identify the full names of the following individuals:

- Members of the American-Arab Anti-Discrimination Committee referenced at ¶¶ 17–19 of the Ayoub Declaration.  *See NYIC, et al. v. U.S. Department of Commerce, et al.*, Dkt. No. 18-cv-5025 (S.D.N.Y.), ECF No. 49-1.
- Members of CASA de Maryland, Inc. with the initials "A.A.", "E.R.", and "M.L.D." referenced at ¶¶ 8, 16–18 of the Escobar Declaration.  *See NYIC, et al. v. U.S. Department of Commerce, et al.*, Dkt. No. 18-cv-5025 (S.D.N.Y.), ECF No. 49-2.

We anticipate serving Rule 45 subpoenas on these individuals; please confirm that you represent them and are authorized to accept service of these subpoenas on their behalf.  Otherwise, please provide personal addresses and contact information for these individuals so they may be properly served.

Thanks,

Stephen Ehrlich
Trial Attorney
U.S. Department of Justice
Civil Division | Federal Programs Branch
202-305-9803 | stephen.ehrlich@usdoj.gov

# EXHIBIT 4

**Archived:** Wednesday, August 29, 2018 2:22:03 PM
**From:** Freedman, John A.
**Sent:** Friday, August 17, 2018 10:23:15 AM
**To:** 'Bailey, Kate (CIV)'; 'Coyle, Garrett (CIV)'; 'Federighi, Carol (CIV)'; 'Kopplin, Rebecca M. (CIV)'; 'Halainen, Daniel J. (CIV)'; 'Tomlinson, Martin M. (CIV)'; 'Ehrlich, Stephen (CIV)'
**Cc:** Colangelo, Matthew'; 'Goldstein, Elena (Elena.Goldstein@ag.ny.gov) (Elena.Goldstein@ag.ny.gov)'; 'Saini, Ajay'; zzz.External.DHo@aclu.org;
zzz.External.SBrannon@aclu.org; zzz.External.PGrossman@nyclu.org; Bauer, Andrew; Gersch, David P.; Grossi, Peter T.; Weiner, David J.; Young, Dylan Scot;
Kelly, Caroline
**Subject:** State of New York v. Department of Commerce, S.D.N.Y 18-CV-2921; NYIC v. Department of Commerce, S.D.N.Y. 18-CV-5025: Various Matters
**Sensitivity:** Normal

---

Counsel --

I write to raise various matters:

1. For purposes of Mr. Jarmin's testimony on Monday, can you please send your attendee list this afternoon?

2. By email dated August 3, we understood the Defendants had received clearance to produce the .csv files requested in native format. We do not believe we have received these. If these have been produced, can you identify where they are found in the record? If not, could you advise when these materials will be produced.

3. There were various documents that Dr. Abowd referenced on Wednesday as being in the Administrative Record that we have not been able to locate -- these include the more extended version of the "swat team" white paper, the back up analysis for the CAPI and 2017 ACS breakoff studies, and the race/ethnicity stratification of the 2016 ACS item non-response. Could you please advise where these are in the record?

4. Please advise where Defendants are in the process of complying with point 2 of Judge Furman's August 14 Order, in particular with the requirement that the information withheld under Title 13 be submitted to the Census Bureau Disclosure Review Board for expeditious review at its next scheduled meeting. Mr. Colangelo previously identified our priority set of materials and requested that Defendants let us know when the next DRB meeting for this week will be held, and whether the DRB does (or does not) need us to identify additional sub-sets of documents for staggered review.

5. This is a response to the various emails that have come in over the last day or so. Subject to your availability, we could meet and confer as early as this afternoon at next 2 pm ET. We have arranged for interested counsel in the California and Maryland cases to be available at this time. Schedules get more complicated next week with travel and vacations.

This is what we would suggest as an agenda:

    A. The Defendants' objections to the Census Bureau 30(b)(6). We are prepared to discuss each of the items raised in Kate's Wednesday letter.

    B. The sufficiency of the supplementation of the Administrative Record. Based on our review of Mr. Cannon's declaration, we have the following questions and concerns:

        1. Paragraph 8 of the declaration is unclear whether all materials collected from the "secured shared drive" (which we assume is a reference to SECURE_ADREC_2020, but please confirm) were produced, or whether they were subject to the search terms described in footnote 2 and on Appendix B. We have questions about whether all materials have been produced, particularly since Dr. Abowd referenced or testified about certain materials that we have not been able to locate (including the materials discussed above in point 3). To the extent materials on the shared drive have not been produced, they should be produced immediately.

        2. With regard to custodians, there were notable omissions of specific individuals we have identified as of interest, or the records or discovery produced indicate had significant involvement such that they are reasonably likely to have responsive materials. From the Census Bureau, this includes Victoria Velkoff, David Raglin, Albert Fotnenot, James Treat, James Whitehorne, and James Dinwiddie. From the Commerce Department, this includes Eric Branstad, David Langdon, Ellen Herbst, Sahra Park-Su, Joseph Semsar, Aaron Willard, and Brian Lenihan.

        3. With regard to search terms, from the listed terms, we have significant concerns about the robustness of the searches performed and whether they were reasonably designed to identify materials concerning the Department's evaluation of the citizenship question:
        a. From the description in the attachments, we are not clear whether the search protocols executed the identified search terms as written or collected materials related to the identified search terms or whether basic search protocols were followed such as covering basic misspellings of proper names (e.g., "Koback"), root expanders (that would pick up Jefferson Sessions), and proximity limiters that would prevent picking up last names used in isolation (such as "Kobach," "Gore" without first names), etc.
        b. While the proper names of certain third parties were used as search terms, we do not understand why their titles ("Attorney General," "the AG,") and other individuals we previously identified (Mary Blanche Hankey, Danielle Cutrona, Eugene (Gene) Hamilton, James McHenry, Steve Bannon, and Marc Neuman) -- were not used as search terms. We note that many of these individuals were identified in response to the NYIC interrogatories 1.b and 1.c.
        c. The substantive search terms used do not address concepts about the potential counting or inclusion of noncitizens (or as they are

referred to at AR 2521 and 763, "undocumented," "aliens," "illegals" or "illegal aliens") in the Census, and the impact that would have on enumeration, apportionment, or districting decisions. The uses of these terms and concepts in Defendants' records found prior to December 12 go directly to the question whether the Department of Justice request was pretext. It is evident from the some of the earliest documents in the administrative record that the internal and external discussions of Commerce Department officials around these topics included use of these terms and concepts.

4. With regard to the Commerce Department respondents, there is nothing in Mr. Cannon's declaration that addresses our questions about senior Commerce officials use of personal or non-governmental accounts to communicate about the potential addition of a citizenship question. We have been raising this issue for at least three weeks, and understood from Stephen's August 10 email that we were to receive a "conclusive position" on August 13. To the best of our knowledge, we have not received further information on this topic.

In light of these considerations, we write to inquire whether the Defendants are standing by the position it has taken in previous meet and confers that the Administrative Record is complete. Pending satisfactory answers to these questions, we plan to advise the Court today that we have raised a number of follow up questions concerning the Wednesday night filing and requested a meet and confer.

C. The Defendants response to the NYIC and NYAG Plaintiffs' RFPs and Interrogatories. We are still reviewing the objections and responses, as well as the documents produced, and will be prepared to meet and confer on the Census Bureau requests in the near future. In the interim, we would like to meet and confer on:

1. The timing when the Defendants will respond to Interrogatory 1.a, and the Defendants' objections to Interrogatories 1.d & 1.e.

2. The Department's reliance on the previously produced Administrative Record as its response to the Requests for Production without re-producing such documents in a manner that complies with the obligation to produce documents as they are maintained in the ordinary course of business. In particular, the productions of electronic materials to date have not included metadata, have not linked document "families," and have largely not been produced in native format.

D. For the NYIC Plaintiffs only, the Government's request for Rule 45 discovery from ten individual, third-party members of the NYIC Plaintiffs organizations.

We have been working with our clients to contact the individual third party members; given the number of parties the Government has identified, this process takes time. We would like to better understand the purpose and objective of this discovery.

Notwithstanding our efforts to reach out to these individuals, our position is that the Defendants must obtain leave of court before engaging in this or any other third party discovery. We note that:

1. Judge Furman ordered the parties on May 9 to identify in the June 26 letters "to what extent the Court should permit discovery";

2. The Defendants' June 26 letter did not indicate Defendants planned to seek Rule 45 discovery; rather the Defendants took the position that there should be no discovery beyond the Administrative Record;

3. The Defendants' initial disclosures similarly did not identify any third parties (or other parties) as having documents or information relevant to support their claims or defenses; rather, Defendants took the position that the only such documents or information were the Administrative Record, as supplemented, and that "there are no fact witnesses Defendants intend to use to support their claims or defenses, other than for impeachment";

4. On July 3, Judge Furman sharply limited third-party discovery in this matter, making clear that discovery could only be sought from the Departments of Commerce and Justice [7/3 Tr. 86.];

5. We do not understand what possible relevance any third party discovery propounded on individual members of the plaintiff organizations could have to this matter, or why this is not an inappropriate effort to harass or inconvenience these individuals. We also do not understand, to the extent any of these individuals might have relevant discovery, why such information could not be sought through other, less burdensome means. To the extent the Court permits Defendants to take third party discovery and the Defendants issue Rule 45 subpoenas, we anticipate we will object and seek a protective order;

In the interest of timing, we are happy to meet and confer regarding the Government's request for leave when we next talk.

Best regards,

John

_____

John A. Freedman

Arnold & Porter
601 Massachusetts Ave., NW
Washington | District of Columbia 20001-3743
T: +1 202.942.5316

John.Freedman@arnoldporter.com | www.arnoldporter.com