# EXHIBIT A

I739stao

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  STATE OF NEW YORK, et al.,

4
                   Plaintiffs,
5
            v.                          18 Civ. 2921 (JMF)
6
   UNITED STATES DEPARTMENT OF
7  COMMERCE, et al.,
                                        Argument
8
                   Defendants.
9

10 ------------------------------x

11 NEW YORK IMMIGRATION
   COALITION,et al.,
12
                   Plaintiffs,
13
            v.                          18 Civ. 5025 (JMF)
14
   UNITED STATES DEPARTMENT OF
15 COMMERCE, et al.,
                                        Argument
16
                   Defendants.
17

18 ------------------------------x

19
                                        New York, N.Y.
20                                      July 3, 2018
                                        9:30 a.m.
21 Before:

22                 HON. JESSE M. FURMAN,

23                                      District Judge

24

25

                   SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

I739stao

1                                    APPEARANCES

2     NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
             Attorneys for Plaintiffs
3     BY:  MATTHEW COLANGELO
             AJAY P. SAINI
4            – and –
      ARNOLD & PORTER KAYE SCHOLER
5     BY:  JOHN A. FREEDMAN
             – and –
6     LAW OFFICE OF ROLANDO L. RIOS
      BY:  ROLANDO L. RIOS
7            – and –
      DEPARTMENT OF LABOR
8     BY:  ELENA S. GOLDSTEIN

9     United States Department of Justice
      Civil Division, Federal Programs Branch
10           Attorneys for Defendants
      BY:  BRETT SHUMATE
11           KATE BAILEY
             JEANNETTE VARGAS
12           STEPHEN EHRLICH

13

14

15

16

17

18

19

20

21

22

23

24

25

I739stao

1    full scope of such materials.  Accordingly, plaintiffs' request

2    for an order directing defendants to complete the

3    Administrative Record is well founded.

4           Finally, I agree with the plaintiffs that there is a

5    solid basis to permit discovery of extra-record evidence in

6    this case.  To the extent relevant here, a court may allow

7    discovery beyond the record where "there has been a strong

8    showing in support of a claim of bad faith or improper behavior

9    on the part of agency decision-makers."  National Audubon

10   Society v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997).  Without

11   intimating any view on the ultimate issues in this case, I

12   conclude that plaintiffs have made such a showing here for

13   several reasons.

14          First, Secretary Ross's supplemental memorandum of

15   June 21, which I've already discussed, could be read to suggest

16   that the Secretary had already decided to add the citizenship

17   question before he reached out to the Justice Department; that

18   is, that the decision preceded the stated rationale.  See, for

19   example, Tummino v. von Eschenbach, 427 F.Supp. 2d 212, 233

20   (E.D.N.Y. 2006) authorizing extra-record discovery where there

21   was evidence that the agency decision-makers had made a

22   decision and, only thereafter took steps "to find acceptable

23   rationales for the decision."  Second, the Administrative

24   Record reveals that Secretary Ross overruled senior Census

25   Bureau career staff, who had concluded -- and this is at page

I739stao

1  1277 of the record -- that reinstating the citizenship question

2  would be "very costly" and "harm the quality of the census

3  count."  Once again, see Tummino, 427 F.Supp. 2d at 231-32,

4  holding that the plaintiffs had made a sufficient showing of

5  bad faith where "senior level personnel overruled the

6  professional staff."  Third, plaintiffs' allegations suggest

7  that defendants deviated significantly from standard operating

8  procedures in adding the citizenship question.  Specifically,

9  plaintiffs allege that, before adopting changes to the

10  questionnaire, the Census Bureau typically spends considerable

11  resources and time -- in some instances up to ten years --

12  testing the proposed changes.  See the amended complaint which

13  is docket no. 85 in the states' case at paragraph 59.  Here, by

14  defendants' own admission -- see the amended complaint at

15  paragraph 62 and page 1313 of the Administrative Record --

16  defendants added an entirely new question after substantially

17  less consideration and without any testing at all.  Yet again

18  Tummino is instructive.  See 427 F.Supp. 2d at 233, citing an

19  "unusual" decision-making process as a basis for extra-record

20  discovery.

21       Finally, plaintiffs have made at least a prima facie

22  showing that Secretary Ross's stated justification for

23  reinstating the citizenship question -- namely, that it is

24  necessary to enforce Section 2 of the Voting Rights Act -- was

25  pretextual.  To my knowledge, the Department of Justice and

I739stao

1    civil rights groups have never, in 53 years of enforcing

2    Section 2, suggested that citizenship data collected as part of

3    the decennial census, data that is by definition quickly out of

4    date, would be helpful let alone necessary to litigating such

5    claims.  See the states case docket no. 187-1 at 14; see also

6    paragraph 97 of the amended complaint.  On top of that,

7    plaintiffs' allegations that the current Department of Justice

8    has shown little interest in enforcing the Voting Rights Act

9    casts further doubt on the stated rationale.  See paragraph 184

10   of the complaint which is docket no. 1 in the Immigration

11   Coalition case.  Defendants may well be right that those

12   allegations are "meaningless absent a comparison of the

13   frequency with which past actions have been brought or data on

14   the number of investigations currently being undertaken," and

15   that plaintiffs may fail "to recognize the possibility that the

16   DOJ's voting-rights investigations might be hindered by a lack

17   of citizenship data."  That is page 5 of the government's

18   letter which is docket no. 194 in the states case.  But those

19   arguments merely point to and underscore the need to look

20   beyond the Administrative Record.

21          To be clear, I am not today making a finding that

22   Secretary Ross's stated rationale was pretextual -- whether it

23   was or wasn't is a question that I may have to answer if or

24   when I reach the ultimate merits of the issues in these cases.

25   Instead, the question at this stage is merely whether --

I739stao

1    assuming the truth of the allegations in their complaints --

2    plaintiffs have made a strong preliminary or prima facie

3    showing that they will find material beyond the Administrative

4    Record indicative of bad faith.  See, for example, Ali v.

5    Pompeo, 2018 WL 2058152 at page 4 (E.D.N.Y. May 2, 2018).  For

6    the reasons I've just summarized, I conclude that the

7    plaintiffs have done so.

8           That brings me to the question of scope.  On that

9    score, I am mindful that discovery in an APA action, when

10   permitted, "should not transform the litigation into one

11   involving all the liberal discovery available under the federal

12   rules.  Rather, the Court must permit only that discovery

13   necessary to effectuate the Court's judicial review; i.e.,

14   review the decision of the agency under Section 706."  That is

15   from Ali v. Pompeo at page 4, citing cases.  I recognize, of

16   course, that plaintiffs argue that they are independently

17   entitled to discovery in connection with their constitutional

18   claims.  I'm inclined to disagree given that the APA itself

19   provides for judicial review of agency action that is "contrary

20   to" the Constitution.  See, for example, Chang v. USCIS, 254

21   F.Supp. 3d 160 at 161-62 (D.D.C. 2017).  But, even if

22   plaintiffs are correct on that score, it is well within my

23   authority under Rule 26 to limit the scope of discovery.

24          Mindful of those admonitions, not to mention the

25   separation of powers principles at stake here, I am not

I739stao

1    inclined to allows as much or as broad discovery as the

2    plaintiffs seek, at least in the first instance.  First, absent

3    agreement of defendants or leave of Court, of me, I will limit

4    plaintiffs to ten fact depositions.  To the extent that

5    plaintiffs seek to take more than that, they will have to make

6    a detailed showing in the form of a letter motion, after

7    conferring with defendants, that the additional deposition or

8    depositions are necessary.  Second, again absent agreement of

9    the defendants or leave of Court, I will limit discovery to the

10   Departments of Commerce and Justice.  As defendants' own

11   arguments make clear, materials from the Department of Justice

12   are likely to shed light on the motivations for Secretary

13   Ross's decision -- and were arguably constructively considered

14   by him insofar as he has cited the December 2017 letter as the

15   basis for his decision.  At this stage, however, I am not

16   persuaded that discovery from other third parties would be

17   necessary or appropriate; to the extent that third parties may

18   have influenced Secretary Ross's decision, one would assume

19   that that influence would be evidenced in Commerce Department

20   materials and witnesses themselves.  Further, to the extent

21   that plaintiffs would seek discovery from the White House,

22   including from current and former White House officials, it

23   would create "possible separation of powers issues."  That is

24   from page 4 of the slip opinion in the Nielsen order.  Third,

25   although I suspect there will be a strong case for allowing a

I739stao

1    deposition of Secretary Ross himself, I will defer that

2    question to another day.  For one thing, I think it should be

3    the subject of briefing in and of itself.  It raises a number

4    of thorny issues.  For another, I'm inclined to think that

5    plaintiffs should take other depositions before deciding

6    whether they need or want to go down that road and bite off

7    that issue recognizing, among other things, that defendants

8    have raised the specter of appellate review in the event that I

9    did allow it.  At the same time, I want to make sure that I

10   have enough time to decide the issue and to allow for the

11   possibility of appellate review without interfering with an

12   expeditious schedule.  So on that issue I'd like you to meet

13   and confer with one another and discuss a timeline and a way of

14   raising the issue, that is to say, when it is both ripe but

15   also timely and would allow for an orderly resolution.

16           So with those limitations, I will allow plaintiffs to

17   engage in discovery beyond the record.  Further, I will allow

18   for expert discovery.  Expert testimony would seem to be

19   commonplace in cases of this sort.  See, for example, Cuomo v.

20   Baldrige, 674 F.Supp. 1089 (S.D.N.Y. 1987).  And as I indicated

21   in my colloquy with Ms. Vargas, I do not read Sierra v. United

22   States Army Corps of Engineers, 772 F.2d 1043 (2d Cir. 1985),

23   to "prohibit" expert discovery as defendants suggestion.  That

24   case, in my view, speaks the deference that a court ultimately

25   owes the agency's own expert analyses, but it does not speak to

I739stao

1      the propriety of expert discovery, let alone clearly prohibit

2      such discovery, let alone do so in a case where, as I have just

3      done so, a finding of bad faith and a rebuttal of the

4      presumption of regularity are at issue.

5              That leaves only the question of timing.  I recognize

6      that you proposed schedules without knowing the scope of

7      discovery that I would permit.  I would like to set a schedule

8      today.  In that regard, would briefly hear from both sides with

9      respect to the schedule.  Alternatively, I could allow you to

10     meet and confer and propose a schedule in writing if you think

11     that that would be more helpful.  Let me facilitate the

12     discussion by throwing out a proposed schedule which is based

13     in part on your letters and modifications that I've made to the

14     scope of discovery.

15             First, by July 16, I think defendants should produce

16     the complete record as well as a privilege log and initial

17     disclosures.  I recognize that Rule 26(a)(1)(B)(i) exempts from

18     initial disclosure "an action for review on an administrative

19     record" but in light of my decision allowing extra-record

20     discovery I do not read that exception to apply.

21             Then I would propose that by September 7, plaintiffs

22     will disclose their expert reports.

23             By September 21, defendants will disclose their expert

24     reports, if any.

25             By October 1, plaintiffs will disclose any rebuttal

I739stao

1  expert reports.

2         And fact an expert discovery would close by

3  October 12, 2018.

4         Plaintiffs also propose that the parties would then be

5  ready for trial on October 31.  My view is it's premature to

6  talk about having a trial.  For one thing, it may well end up

7  making sense to proceed by way of summary judgment rather than

8  trial.  For another thing, I don't know if we need to build in

9  time for Daubert motions or other pretrial motions that would

10  require more than 19 days to brief and for me to decide.  I

11  would be inclined, instead, to schedule a status conference for

12  sometime in September to check in on where things stand, making

13  sure that things are proceeding apace and get a sense of what

14  is coming down the pike and decide how best to proceed.  Having

15  said that, I think it would make sense for you guys to block

16  time in late October and November in the event that I do decide

17  a trial is warranted.  Again, I am mindful that my word is not

18  likely to be the final one here and I want to make sure that

19  all sides have an adequate opportunity to seek whatever review

20  they would need to seek after a final decision.

21         So that's my ruling.  You can respond to my proposed

22  schedule.  I'd be inclined to set it today but if you think you

23  need additional time.

24         MR. FREEDMAN:  Your Honor, John Freedman.  Just one

25  clarification.  I think it was clear from what you said but in

I739stao

1   terms of the number of depositions you meant ten collectively

2   between the two cases, not ten per case?

3              THE COURT:  Correct.  And they would be

4   cross-designated or cross-referenced in both cases.  Correct.

5              MR. FREEDMAN:  Understood, your Honor.

6              THE COURT:  And, again, I don't mean to suggest that

7   you will get more, but that's not -- I did invite you to make a

8   showing with specificity for why additional depositions would

9   be needed.  If it turns out that it is warranted, I'm prepared

10  to allow it but, mindful of the various principles at stake and

11  the limited scope of review under the APA, I think that it

12  makes sense to rein discovery in in a way that it wouldn't be a

13  standard civil action.

14             So, thoughts?

15             MR. COLANGELO:  Your Honor, for the state and local

16  government plaintiffs, we have no concerns at all.

17             THE COURT:  Microphone, please.

18             MR. COLANGELO:  For the state and local government

19  plaintiffs, we have no concerns at all with the various

20  deadlines that the Court has set out.  Thank you.

21             MR. FREEDMAN:  Your Honor, for the NYIC plaintiffs we

22  concur.  We think that it sets an appropriately expedited

23  schedule that will resolve the issues in time and we appreciate

24  the expedited consideration.

25             THE COURT:  All right.  Defendants.