<mark>Case 1:18-cv-05025-JMF   Document 117   Filed 08/31/18   Page 1 of 5</mark>

August 31, 2018

The Honorable Jesse M. Furman
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

      RE:    Plaintiffs' fifth letter-motion regarding discovery in *State of New York, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-2921 (JMF), and *New York Immigration Coalition, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-5025 (JMF)

Dear Judge Furman,

    Plaintiffs write pursuant to Local Civil Rule 37.2 and Rule 2(C) of this Court's Individual Rules and Practices to request an informal discovery conference with the Court, or an order providing the relief described below.  Plaintiffs have been unable to resolve the disputes described in this letter-brief through good faith meet-and-confer discussions with Defendants.

    *1. The Court should compel a full response to the NYIC Plaintiffs' Interrogatory 1*: On July 12, the NYIC Plaintiffs propounded three interrogatories to Defendants Department of Commerce and Ross, including a request to identify certain individuals referenced in Secretary Ross' June 21, 2018 "Supplemental Memorandum." 18-CV-2921 ECF 189-1, AR 1321.  The Supplemental Memorandum states, in part:

> Soon after my appointment as Secretary of Commerce, I began considering various fundamental issues regarding the upcoming 2020 Census . . . .  Part of these considerations included whether to reinstate a citizenship question, *which other senior Administration officials had previously raised*.  My staff and I thought reinstating a citizenship question could be warranted, and *we had various discussions with other governmental officials* about reinstating a citizenship question to the Census.  As part of that deliberative process, my staff and I *consulted with Federal governmental components* . . . .

*Id.* (emphasis added).  Accordingly, on July 12, Plaintiffs propounded a request to identify the "senior Administration officials" who "previously raised" adding the citizenship question (Interrogatory 1.a); the consultations the Secretary and his staff participated in when they "consulted with Federal governmental components" (Interrogatory 1.d) and the date on which the "senior Administration officials" who "previously raised" reinstating the citizenship question first raised this subject (Interrogatory 1.c). Ex. 1 at 13.  Each of these questions is relevant to key questions going to the merits of these lawsuits, including whether there was political interference with the administrative process.  *See, e.g.*, *Tummino v. Torti,* 603 F. Supp. 2d 519, 542 (E.D.N.Y. 2009); *Latecoere Int'l, Inc. v. U.S. Dep't of Navy,* 19 F.3d 1342, 1356 (11th Cir. 1994).  On August 13, Defendants served responses.  The responses are deficient in two respects.

    First, with respect to the request to identify the "senior Administration officials" who "previously raised" reinstating the citizenship question, Defendants responded that they "have not to date been able to identify individuals responsive" to this request.  Although Defendants

1

have indicated during the August 21 meet and confer that they were still investigating, they have not supplemented the response. Ex. 2, 3. On August 29, Defendants again committed to provide a response that evening, but failed to do so. It should not be difficult for Defendants to identify the "senior Administration officials" referred to in a memo Secretary Ross wrote just two months ago. Defendants should be compelled to produce this information immediately.

Second, with respect to the requests to provide information about dates such issues were "previously raised" and the "consul[tations] with Federal governmental components," the Defendants identified nine individuals who participated in this process, but no dates or other information about such consultations. Ex. 1 at 13 Rog. 1.b. As discussed below, there is limited information about these contacts in the Administrative Record, and the Department of Commerce witnesses who were direct participants in some of these communications have testified they have no recollection of these matters. And while Defendants initially objected to this request as overbroad because it would purportedly require them to identify consultations to which they were not a party, Plaintiffs have agreed to narrow this request to the dates of consultations "with Secretary Ross and Commerce," and all persons with whom, "to the knowledge of Commerce and Secretary Ross," senior Administration officials had previously raised adding the citizenship question. Exs. 3, 4. Despite Plaintiffs' willingness to accommodate Defendants' objection, Defendants have nevertheless failed to respond to this request and have not indicated a timeframe for their response; they should be compelled to produce this information immediately. Ex. 5.

2. *The Court should compel Defendants to undertake reasonable searches of all material custodians to complete the Administrative Record*: In their August 13 motion to compel, Plaintiffs identified a number of gaps in the Administrative Record directly related to the question whether there was political interference in the administrative process. 18-CV-5025, ECF 82. In response, on August 15 the Defendants submitted a Declaration from Michael Cannon identifying the custodians and search terms used to collect the Administrative Record. 18-CV-5025, ECF 89. On August 17, Plaintiffs advised Defendants that based on Mr. Cannon's description, there appeared to be significant deficiencies in the Defendants' collection efforts, including failure to utilize search terms reasonably designed to identify materials concerning the genesis and consideration of the citizenship question and failing to collect materials from a number of important custodians. Ex. 2. On August 17, the Court denied the motion to compel without prejudice, holding that Plaintiffs "may renew their letter motion . . . if or when [they] have reason to believe" Defendants had not "taken all proper and reasonable steps to ensure that the administrative record and supplemental materials are complete." 18-CV-5025, ECF 91. Following a meet and confer on August 21, Plaintiffs offered to narrow the scope of remedial searches and custodians. Ex. 3. On August 28, Defendants refused to supplement their searches. Ex. 5.

a. The Defendants failed to conduct reasonable searches designed to elicit information about partisan or discriminatory motivation. There are two distinct deficiencies in the search terms Defendants used to search for the supplemental Administrative Record materials. First, the Defendants failed to use search terms reasonably calculated to identify documents about the potential enumeration or inclusion of noncitizens, anti-immigrant animus, or the impact adding the question would have on enumeration, apportionment, districting, or federal funding decisions. While the searches covered the terms "census" in proximity to "DOJ" or

2

"citizenship," they did not search for terms referencing "aliens," "illegals," "illegal aliens," or "undocumented," even though the Administrative Record contains documents using such terms derisively. *See* Ex. 6. Such documents are probative both of animus, and whether the articulated rationale for the question is pretext.

Second, the Defendants failed to use search terms reasonably calculated to identify memorialization of the pre-December 2017 engagement with the Departments of Justice or Homeland Security, or third parties such as Steve Bannon or Mark Neuman. For example, of the nine individuals identified in response to Interrogatory 1.b and 1.c as being "other government officials" who discussed adding the citizenship question, the Defendants conducted searches for three – Mr. Kobach, Attorney General Sessions, and Acting Assistant Attorney General Gore. *Compare* ECF 89-1 & 2 with Ex. 1 at 1.b. The Defendants did not search for the Homeland Security representative (Eugene "Gene" Hamilton). Nor did they search for the Justice officials identified as points of contact in the Administrative Record and who have oversight over immigration policy (James McHenry, Danielle Cutrona, Mary Blanche Hankey). Nor did they search for contacts with Messrs. Bannon or Neuman, even though the Administrative Record discloses that Mr. Neuman had substantive discussions of the citizenship question with Secretary Ross, Ms. Teramoto, and Messrs. Comstock, Uthmeier, and Davidson. Because none of these individuals has any responsibility for Voting Rights Act enforcement, evidence of their engagement by Commerce officials is probative that Defendants' stated purpose for adding the citizenship question is pretext. In prior meet and confers and the August 13 motion, Plaintiffs noted the dearth of materials in the Administrative Record regarding these contacts notwithstanding references in the record that they were engaged. *See, e.g.*, Ex. 7.

b. The Defendants failed to search all proper custodians, and conspicuously omitted key political appointees at the Department of Commerce. Mr. Cannon's declaration reflects that the Defendants searched the records of 14 Commerce employees. ECF 89-1 & 89-2. But his list omits three key individuals who were actively engaged on the addition of the citizenship question, including the individuals who interacted directly with the White House about the question. These omissions include Department's White House liaison (Eric Branstad) who was engaged in March 2017 about Secretary Ross's "question on the Census" whether "undocumented residents (aliens) in the 50 states [are] included in the apportionment population counts," Ex.8, and key members of the Intergovernmental Affairs team (Aaron Willard and Brian Lenihan) who were engaged in July and December 2017 respectively, Exs. 11, 12, and played significant roles supporting senior Commerce officials and interacting with the White House. Custodial searches should have been conducted for all three of these individuals.

The Defendants should be compelled to undertake reasonable searches of all material custodians to complete the Administrative Record.

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP
AMERICAN CIVIL LIBERTIES UNION

By:   /s/ John A. Freedman

| | |
|---|---|
| Dale Ho | Andrew Bauer |
| American Civil Liberties Union Foundation | Arnold & Porter Kaye Scholer LLP |
| 125 Broad St. | 250 West 55th Street |
| New York, NY 10004 | New York, NY 10019-9710 |
| (212) 549-2693 | (212) 836-7669 |
| dho@aclu.org | Andrew.Bauer@arnoldporter.com |
| | |
| Sarah Brannon[+]** | John A. Freedman |
| American Civil Liberties Union Foundation | Arnold & Porter Kaye Scholer LLP |
| 915 15th Street, NW | 601 Massachusetts Avenue, N.W. |
| Washington, DC 20005-2313 | Washington, DC 20001-3743 |
| 202-675-2337 | (202) 942-5000 |
| sbrannon@aclu.org | John.Freedman@arnoldporter.com |

Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org

+ admitted pro hac vice
** Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R. 49(c)(3).

Attorneys for *NYIC* Plaintiffs, 18-CV-5025

BARBARA D. UNDERWOOD
*Attorney General of the State of New York*

By: */s/ Matthew Colangelo*
Matthew Colangelo (MC-1746)
  *Executive Deputy Attorney General*
Elena Goldstein (EG-8586), *Senior Trial Counsel*
Ajay Saini (AS-7014), *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
Matthew.Colangelo@ag.ny.gov

Attorneys for *State of New York* Plaintiffs, 18-CV-2921