September 4, 2018

The Honorable Jesse M. Furman
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

>  RE:   Plaintiffs' letter motion to compel production of documents withheld or redacted on grounds of deliberative process privilege in *New York Immigration Coalition, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-5025 (JMF), and *State of New York, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-2921 (JMF)

Dear Judge Furman,

On August 14, 2018, this Court held that it would apply a balancing test to assertions of deliberative process privilege in this case, and that Plaintiffs could seek to compel production of "specific documents or categories of documents" under that test. 18-CV-2921, ECF No. 241 at 2. Plaintiffs now seek to compel production of 32 documents (the "Documents") that Defendants have withheld on deliberative process grounds. *See* Ex. A (highlighted in yellow).

All but two of these records were created or received by Secretary Ross, Earl Comstock, Wendy Teramoto, or Karen Dunn Kelley, the four senior Department of Commerce ("Commerce") officials most heavily involved in the decision to add the citizenship question. The withheld records of these officials are critical to assessing whether Defendants acted with discriminatory intent in adding the citizenship question, and whether and how Defendants used the Department of Justice ("DOJ") to create a pretext to mask their true motivations. The Documents thus are essential to the adjudication of both the Administrative Procedure Act and equal protection claims in these cases, and Defendants can cite no legitimate government interest in shielding records that will shed light on a scheme to mislead the American public.

### A. Every Factor in the Balancing Test Weighs in Favor of Disclosure

Under the balancing test that this Court adopted, this Court considers: (1) the relevance of the evidence; (2) the availability of other evidence; (3) the seriousness of the litigation; (4) the role of the agency in the litigation; and (5) the possibility that disclosure will inhibit future candid debate among agency decision-makers. *Winfield v. City of N.Y.*, 2018 WL 716013, at *5-6 (S.D.N.Y. Feb. 1, 2018). While this Court adopted this balancing test rather than holding the privilege categorically inapplicable in this case, courts have noted that where the decisionmaking process is a central issue, the difference between the two approaches is "more stylistic than substantive." *In re Delphi Corp.*, 276 F.R.D. 81, 85 (S.D.N.Y. 2011). Where "the deliberative or decisionmaking process is the 'central issue,'" "the need for the deliberative documents" will typically "outweigh the possibility that disclosure will inhibit future candid debate." *Id.*

1. *The Documents Are Essential to This Litigation*: This factor weighs strongly in favor of disclosure where a plaintiff must show improper intent to establish its legal claims. *U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 166 (E.D.N.Y. 1994); *MacNamara v. City of N.Y.*, 249 F.R.D. 70, 84-85 (S.D.N.Y. 2008). This is especially so in cases "involving

allegations of discrimination [or] pretext," because the "decisionmaking process" and the motivations of "individual" government actors may be highly probative of such claims. *Citizens Union of City of N.Y. v. Atty. Gen. of N.Y.*, 269 F. Supp. 3d 124, 167 (S.D.N.Y. 2017).

The Documents "go[] to the heart of" Plaintiffs' equal protection and APA claims. *Burbar*, 303 F.R.D. at 14. They are relevant to whether Defendants acted with discriminatory intent toward immigrant communities, whether Defendants acted under political pressure, and whether they created a pretext to justify their decision:

- Some may reflect outright animus toward immigrant communities of color. *See, e.g.,* AR 3888 (email with the subject "Counting of illegal immigrants").
- Many significantly predate the DOJ December 12, 2017 request and will shed light on why Secretary Ross wanted to add the citizenship question, including documents surrounding his May 2017 statement that his request was "months old." AR 3695, 3698, 3702, 3710, 3888.
- Ten documents concern the events surrounding Secretary Ross' September 2017 phone call with the Attorney General to solicit DOJ to request the question, which may illustrate that the stated reason of Voting Rights Act enforcement is pretext. AR 1403, 2458, 2461 (& attachment), 3687, 3990, 9834, 3984, 11047, 11048, 11362.
- Eleven documents reflect Commerce officials' reactions to Census Bureau opposition to adding the question, including reactions to Dr. John Abowd's memoranda of January 3, January 19, and March 1, 2018, which concluded that adding a citizenship question would be "very costly, harms the quality of the census count, and would use substantially less accurate citizenship status data." These records may also shed light on whether the stated rationale is pretext. AR 2474, 2517, 10273, 10291, 10299, 10342, 10351, 10352, 10356, 11250, 11252.
- Ten documents relate to congressional testimony or other communications with Congress and the media, which are relevant to whether there were efforts to mislead the public with a pretextual explanation. AR 2160, 2199, 3687, 3690, 3695, 3698, 3907, 3990, 5428, 5440.

2. *The Information is Not Available from Other Sources*: This factor weighs decidedly in favor of disclosure where plaintiffs allege discrimination or pretext, because the "evidence needed to demonstrate invidious or discriminatory motives . . . may not be available from sources other than individual [government actors]." *Citizens*, 269 F. Supp. 3d at 167. Here, the Documents are effectively the only evidence of Defendants' motivations for adding the question and requesting DOJ to provide the rationale.

Indeed, the need for the Documents is especially critical given the obfuscation about key events by Teramoto, Comstock, and Kelley in their depositions. The lack of forthrightness of these senior government officials was troubling to say the least. Ms. Teramoto, the Secretary's Chief of Staff, repeatedly claimed that she "wasn't involved" and played no role in the decision to add citizenship question, *see, e.g.*, Ex. B. at 70-71, 82, 93-94, 103, 122, 205-11, despite being on numerous e-mails and phone calls discussing the issue and personally organizing meetings on it. Ms. Teramoto claimed no memory. *See, e.g.*, *id.* at 40-41, 54-56, 77, 87-89. And despite contemporaneous documentation—from Secretary Ross himself—showing she was the only other person on a phone call between Secretary Ross and Attorney General Sessions to discuss the matter, she now says she was not. *Id.* at 82-85. Mr. Comstock, who was Secretary Ross' point person on adding the citizenship question, admits that the Secretary asked to include the

question in early 2017 before the VRA rationale surfaced, but remarkably testified that he never discussed the Secretary's rationale with the Secretary, or anyone else, because the Secretary's actual reason for wanting the question was "irrelevant."  Ex. C at 111-13, 250-73, 285-86, 300-08.  And Ms. Kelley testified to having no recollection of any conversation, at any time, with Secretary Ross in which he indicated that he was interested in the citizenship question as early as the spring of 2017.  Ex. D at 27-31, 90-92.  Given the failed memories of Commerce's senior leadership, the need for contemporaneous, documentary evidence is paramount.

      3.  *The Litigation is of Exceptional Public Importance*:  This case is of great public importance, and this factor weighs heavily in favor of disclosure.  An undercount in the Census will affect allocation of Electoral College votes, the apportionment of congressional seats, the configuration of congressional and state legislative districts, and billions of dollars in federal and state funding.  *See, e.g.*, *Favors v. Cuomo*, 285 F.R.D. 187, 219 (E.D.N.Y. 2012).

      4.  *Commerce Has a Central Role in the Case and the Alleged Wrongdoing*:  This factor "considers the role played by [the agency] and its members in the allegedly unlawful conduct."  *Favors v. Cuomo*, 2015 WL 7075960, at *11 (E.D.N.Y. Feb. 8, 2015).  Commerce and its leadership played a "direct" role in the alleged unlawful conduct here, and thus "the fourth factor weighs in favor of disclosure."  *Citizens*, 269 F. Supp. 3d at 169.

      5.  *There is No Risk of Chilling Legitimate Deliberations*:  The purpose of the privilege is to "protect frank discussion of legal or policy matters" to promote "the quality of agency decisions."  *Resolution Tr. Corp. v. Diamond*, 137 F.R.D. 634, 642-43 (S.D.N.Y. 1991).  The "justification for the privilege" therefore disappears where shielding the information would undermine, rather than promote, "the public's interest in effective government."  *Burbar*, 303 F.R.D. at 14.  One such circumstance is "when the information sought may shed light on alleged government malfeasance."  *Id.*; *accord In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997) .

      That is the case here.  The Documents are not likely to reveal internal debate over legitimate policy objectives, but rather the reasons why Defendants sought to concoct an *ex post* justification for a conclusion they had already reached.  There is no legitimate interest in protecting such communications, and no cause for concern that such discussions will be "chilled."  The purpose of the privilege is to protect deliberations by government actors over how to best serve the American public, not "deliberations" over how best to mislead the public.  In all events, any legitimate interest Defendants have in shielding the requested documents is far-outweighed by the importance of the documents to Plaintiffs' claims.

### B.  *In Camera* Review is Warranted

      *In camera* review is warranted for the Documents.  During this review, Plaintiffs request the Court also assess the invocation of additional privileges over three of the records.  Defendants assert attorney-client privilege over AR 2458, but no legal counsel was on the communication, nor does the subject matter reflect that the document's purpose was to provide legal advice.  Defendants assert work-product privilege over AR 3888 and 3984, but Defendants' log does not reflect involvement of counsel in these documents or specify that they were prepared in anticipation of litigation.  And as previously discussed (18-CV-2921, ECF No. 220), AR 3888 and 3984 significantly predate the DOJ request and are not proximate to any litigation.

3

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP
AMERICAN CIVIL LIBERTIES UNION

By: __/s/ Daniel F. Jacobson___

| | |
|---|---|
| Dale Ho<br>American Civil Liberties Union Foundation<br>125 Broad St.<br>New York, NY 10004<br>(212) 549-2693<br>dho@aclu.org | Andrew Bauer<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, NY 10019-9710<br>(212) 836-7669<br>Andrew.Bauer@arnoldporter.com |
| Sarah Brannon[+]**<br>Davin M. Rosborough**<br>American Civil Liberties Union Foundation<br>915 15th Street, NW<br>Washington, DC 20005-2313<br>202-675-2337<br>sbrannon@aclu.org<br>drosborough@aclu.org | John A. Freedman<br>Daniel F. Jacobson[+]<br>Arnold & Porter Kaye Scholer LLP<br>601 Massachusetts Ave. NW<br>Washington, DC 20001-3743<br>(202) 942-5000<br>John.Freedman@arnoldporter.com<br>Daniel.Jacobson@arnoldporter.com |

Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org

+ admitted pro hac vice
** Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R. 49(c)(3).

Attorneys for *NYIC* Plaintiffs, 18-CV-5025

BARBARA D. UNDERWOOD
*Attorney General of the State of New York*

4

By: */s/ Matthew Colangelo*
Matthew Colangelo (MC-1746)
  *Executive Deputy Attorney General*
Elena Goldstein (EG-8586), *Senior Trial Counsel*
Ajay Saini (AS-7014), *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
Matthew.Colangelo@ag.ny.gov

Attorneys for *State of New York* Plaintiffs, 18-CV-2921