September 6, 2018

The Honorable Jesse M. Furman
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

      RE:    *Plaintiffs' Opposition to Motion for Stay in State of New York, et al. v. U.S. Dep't*
             *of Commerce, et al.,* 18-CV-2921 (JMF) and *New York Immigration Coalition, et*
             *al. v. U.S. Dep't of Commerce, et al.*, 18-CV-5025 (JMF)

Dear Judge Furman,

     Plaintiffs submit this opposition to Defendants' motion to stay discovery. 18-CV-2921, ECF No. 292; 18-CV-5025, ECF No. 116. Defendants' request is without merit. Nearly two months after this Court first authorized discovery in these matters, Defendants seek to strategically delay this litigation and undermine the scheduling order that has long been in place. Nowhere do Defendants explain why they delayed for two months in challenging the July 5 Order when it was clear that this Order authorized discovery beyond the Administrative Record and from the Department of Justice. Nor do Defendants come close to satisfying the requirements for a stay – they have not and cannot show irreparable harm; their legal position that this Court abused its discretion is without merit; and no other equities warrant a stay.

     *1. The Defendants Have Not Established Irreparable Harm.* Defendants' cursory recitation of the "significant time and resources" to respond to discovery requests or to "prepare for and attend an inherently burdensome deposition" by one official does not constitute "irreparable injury." Before filing this motion, Defendants never articulated any particularized burden associated with discovery. Ex. 1. Indeed, Plaintiffs made clear during the meet and confer process that they are willing to try to accommodate any specific concerns about burden. *See* Ex. 1 & 2 (explaining that Plaintiffs agreed to Defendants' proposal to exclude voluminous press clippings from production). By way of comparison, the materials at issue are orders of magnitude less than the volume that the Second Circuit considered reasonable in denying the federal government's mandamus petition in the DACA litigation, where mandamus was denied. *See In re Nielsen*, No. 17-3345, slip op. at 3-4 (2d Cir. Dec. 27, 2017) ("Administrative records, particularly those involving an agency action as significant as the repeal of DACA, are often quite voluminous.") (Ex. 3). The purported discovery burden presented here does not come close to rising to the level of irreparable harm.

     *2. There are no "Exceptional Circumstances" or "Clear Abuse of Discretion" that Warrant Mandamus or a Stay.* At the July 3 hearing, the Court properly applied the well-established standard to permit extra-record discovery in an Administrative Procedure Act case: "an extra-record investigation by the reviewing court may be appropriate when there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers." *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 8, 14 (1997) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971)). As this Court recognized, substantial evidence supports a finding of bad faith, including the shifting timeline of decision set forth in the Secretary's original and supplemental decision memoranda, documents

1

suggesting that the Secretary's decision preceded his stated rationale, the overruling of senior scientific Census Bureau officials, deviation from the standard operating procedures in adding the citizenship question, and evidence that the stated reason – the enforcement of Section 2 of the Voting Rights Act – is pretextual.  *See* Tr. at 80-84.  This evidence included, *inter alia*:

- documentation of political interference in the decision including (1) discussions between senior Commerce Department aides, the Secretary, and Kris Kobach to add the question so as to, in Mr. Kobach's words, "address the problem that aliens who do not actually reside in the United States are still counted for congressional apportionment purposes," AR 763, (2) Secretary Ross's acknowledgment that "other senior Administration officials" first raised adding the question, AR 1321, and (3) the Trump Campaign's statement that the President "mandated" the addition of the question, 18-CV-5025 ECF 1 at ¶ 178;
- Secretary Ross's wholesale disregard of the recommendations of Census Bureau professional staff, who repeatedly advised that adding the question was "very costly, harms the quality of the census count, and would use substantially less accurate citizenship data than are available" from other sources.  AR 1277, AR 1312; and
- significant efforts to conceal and actively mislead the public regarding the timing, genesis, and purpose of the question, including the misleading accounts in Secretary Ross's March 21 memo, his Congressional testimony, and the concealment of Mr. Gore's role in ghostwriting the request.  *Compare* AR 1321 with AR 1313.  *See also* 18-CV-5025 ECF 1 at ¶¶ 166-167.[1]

The Court's decision from the bench aptly summarized the evidence of bad faith, laid out the correct legal standard, and carefully calibrated the scope of permitted discovery consistent with the Second Circuit's guidance in *National Audubon Society* and *Nielsen*.  *See* 7/3 Tr. 76-89.  Defendants cannot reasonably dispute the well-established authority that that political interference or discriminatory motivation warrants invalidation of an agency decision.  *See, e.g., Town of Orangetown v. Ruckelshaus*, 740 F.2d 185 (2d Cir. 1984); *D.C. Fed'n of Civic Ass'ns v. Volpe*, 459 F.2d 1231 (D.C. Cir. 1972); *Latecoere Int'l v. U.S. Dep't of Navy*, 19 F.3d 1342 (11th Cir. 1994); *Tummino v. Torti*, 693 F. Supp. 2d 519, 547 (E.D.N.Y. 2009).  Indeed, the Supreme Court cases cited by the Defendants do not preclude extra-record discovery in appropriate circumstances – to the contrary, *Overton Park* expressly authorizes expansion of the administrative record and cautions that judicial review of the agency decision must be "searching and careful," 401 U.S. at 416.  *State Farm* similarly emphasizes the rigor with which an agency decision is examined.[2]  463 U.S. at 43.

---

[1] While there was ample evidence of bad faith at the time of the July 3 decision, the completion of the Administrative Record and further discovery have confirmed that there is significant evidence of bad faith and improper behavior on the part of Defendants.  *Compare* Comstock Dep. Tr. 266 (Ex. 4) ("[M]y job is to figure out how to carry out what my boss asks me to do. So you go forward and you find a legal rationale."), *and id.* at 267 ("I don't need to know what [the Secretary's] rationale might be, because it may or may not be one that is – that is something that's going to [be] a legally-valid basis."), *with Tummino v. Von Eschenbach*, 427 F. Supp. 2d 212, 233 (E.D.N.Y. 2006) ("[A] plausible interpretation . . . is that senior management . . . had long since decided" how to proceed, "but needed to find acceptable rationales for the decision"); *see also* Ex. 5 (AR excerpts).
[2] As discussed in *Nielsen*, the Defendants' interpretation of *Florida Power* as precluding extra-record discovery is incorrect. Ex. 3 (*Nielsen*, slip op. at  2 n.1).

Accordingly, Defendants cannot meet their heavy burden to show that the Court committed an abuse of discretion.  Nor do Defendants address *NYIC* Plaintiffs' entitlement to discovery under their Equal Protection claim.  *See, e.g., Webster v. Doe*, 486 U.S. 592, 604 (1988); *Crawford-El v. Britton*, 523 U.S. 574 (1998); *Nielsen*, slip op. at 3 n.2.[3]

For similar reasons, the Court's August 17 ruling compelling testimony from Mr. Gore was not an abuse of discretion.  18-CV-2921, ECF No. 261; 18-CV-5025, ECF No. 91.  Starting in September 2017, Mr. Gore was the primary point of contact for the senior Commerce Department political appointees about the addition of the citizenship question, and ultimately ghostwrote the request submitted by the Department of Justice.[4]  Defendants have confirmed that Mr. Gore is among the government officials referenced in Secretary Ross's June 21 "supplemental" memo "who, before the December 12, 2017 Department of Justice letter . . . either (a) discussed the citizenship question with Secretary Ross, (b) had raised or discussed whether to reinstate a citizenship question, or (c) were consulted by Secretary Ross or his staff regarding whether the Department of Justice would support, and if so would request, inclusion of a citizenship question . . . ."  Ex. 6.  The August 17 Order noted that Mr. Gore possesses relevant information that cannot be obtained from another source, would not meaningfully "hinder" him, and would not "unduly burden" him.  There is no blanket prohibition on deposing high level officials, *e.g., Clinton v. Jones*, 520 U.S. 681 (1997), and the deposition is justified because Mr. Gore "has unique first-hand knowledge related to the litigated claims" or  possesses "necessary information [that] cannot be obtained through other, less burdensome or intrusive means." *Lederman v. New York City Dep't of Parks and Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (establishing an "exceptional circumstances" test in the Second Circuit for deposing high-ranking government officials); *United States v. City of New York,* No. 07-CV-2067 NGG/RLM, 2009 WL 2423307, at *3 (E.D.N.Y. Aug. 5, 2009) (authorizing deposition of then-Mayor Michael Bloomberg); *Sherrod v. Breitbart*, 304 F.R.D. 73, 76 (D.D.C. 2014) (authorizing deposition of U.S. Secretary of Agriculture).  The Court's findings were in accordance with this guidance and not an abuse of discretion.  Moreover, the deposition has been noticed for September 12 – a date the Department of Justice indicated Mr. Gore was available.

   *3. Delay of this Matter injures Plaintiffs and the Public.*  As this Court has previously recognized, "time is of the essence here because the clock is running on census preparations," and this matter needs to be resolved expeditiously.  Tr. of July 3 Hearing at 77.  It is in the interests all parties and the public to reach a resolution on the merits as expeditiously as possible. A stay of discovery would hinder that goal.

In addition, Plaintiffs' expert disclosures are due tomorrow, September 7; if a stay is entered after that date and extends to expert deadlines, Defendants would gain the advantage of a longer time to respond than the Court ordered.  If the Court is inclined to grant any stay at all, it should only stay fact discovery and should not stay expert disclosures – both because of the imperative of keeping these lawsuits on schedule, as well as the inherent unfairness of Defendants obtaining a strategic unilateral extension of their expert disclosure deadlines.

---

[3] At the July 3 hearing, the Court – although "inclined to disagree" with Plaintiffs' position – did not decide whether extra-record discovery was authorized in connection with the constitutional claims in this case. Tr. of July 3 Hearing at 85.

[4] AR 2488, 2491, 2496, 2562, 2634, 2651, 2688, 11193; ECF 99-1 at ¶¶8, 227-28, 249-52, 258-59; Ex. 7.

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP
AMERICAN CIVIL LIBERTIES UNION

By:   /s/ John A. Freedman

| | |
|---|---|
| Dale Ho | Andrew Bauer |
| American Civil Liberties Union Foundation | Arnold & Porter Kaye Scholer LLP |
| 125 Broad St. | 250 West 55th Street |
| New York, NY 10004 | New York, NY 10019-9710 |
| (212) 549-2693 | (212) 836-7669 |
| dho@aclu.org | Andrew.Bauer@arnoldporter.com |
| | |
| Sarah Brannon[+][**] | John A. Freedman |
| American Civil Liberties Union Foundation | Arnold & Porter Kaye Scholer LLP |
| 915 15th Street, NW | 601 Massachusetts Avenue, N.W. |
| Washington, DC 20005-2313 | Washington, DC 20001-3743 |
| 202-675-2337 | (202) 942-5000 |
| sbrannon@aclu.org | John.Freedman@arnoldporter.com |

Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org

+ admitted pro hac vice
** Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R.
49(c)(3).

Attorneys for *NYIC* Plaintiffs, 18-CV-5025

BARBARA D. UNDERWOOD
Attorney General of the State of New York

By: /s/ Matthew Colangelo
Matthew Colangelo (MC-1746)
  Executive Deputy Attorney General
Elena Goldstein (EG-8586), Senior Trial Counsel
Ajay Saini (AS-7014), Assistant Attorney General
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
Matthew.Colangelo@ag.ny.gov

Attorneys for *State of New York* Plaintiffs, 18-CV-2921