# Exhibit 4

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF NEW YORK

3    ----------------------------------------

     NEW YORK IMMIGRATION COALITION, ET AL.,

4

                    Plaintiffs,

5          vs.        Case No.  1:18-CF-05025-JMF

6    UNITED STATES DEPARTMENT OF COMMERCE, ET AL.,

7                    Defendants.

     ----------------------------------------

8

9                    Washington, D.C.

10                   Thursday, August 30, 2018

11   Deposition of:

12                   EARL COMSTOCK

13   called for oral examination by counsel for

14   Plaintiffs, pursuant to notice, at the office of

15   Arnold & Porter, 601 Massachusetts Avenue NW,

16   Washington, D.C., before KAREN LYNN JORGENSON,

17   RPR, CSR, CCR of Capital Reporting Company,

18   beginning at 9:08 a.m., when were present on

19   behalf of the respective parties:

20

21

22

1  reported back to the Secretary, I'm sorry,

2  Mr. Secretary, it does not appear we can

3  accomplish this objective.

4      Q   Why did you need to come up with a reason

5  for asking the question, separate and apart from

6  whatever reason the Secretary had in his own head?

7      A   Again, my job is to figure out how to

8  carry out what my boss asks me to do.  So you go

9  forward and you find a legal rationale.  Doesn't

10  matter what his particular personal perspective is

11  on it.  It's not -- it's not going to be the basis

12  on which a decision is made.

13      Q   That's your understanding, that the way

14  you should do it, is come up with a rationale that

15  has nothing to do with what's in the Secretary's

16  mind as to why he wants it; is that your

17  understanding of how it's supposed to work?

18      A   No.  Again, you continue to characterize

19  things in a way that you believe may be correct,

20  but not the way I believe to be correct.  My job,

21  as a person who has been doing this for 30-plus

22  years for clients and people in the government, is

1  if they would like to accomplish an objective, I

2  see if there's a way to do that.  And, again, if

3  it's not legal, you tell them that.  If it can't

4  be done, you tell them that.  If there's a way to

5  do it, then you help them find the best rationale

6  to do it.  That's what a policy person does.

7       And so, again, if I came up with a

8  rationale that the Secretary didn't agree with or

9  didn't support, then he was going to tell me that.

10 I have no doubt about that.  But in the meantime,

11 he doesn't -- I don't need to know what his

12 rationale might be, because it may or may not be

13 one that is -- that is something that's going to a

14 legally-valid basis.

15      So, again, he's got -- he's asked, can we

16 put -- can we put a question on?  The job of a

17 policy person is go out and find out how you do

18 that.  Whether that decision is going to be made

19 ultimately to do it or not, that's up to the

20 decision-maker.

21   Q   Are you saying you're better off not

22 knowing what the Secretary's own rationale is for

Page 268

1  wanting the citizenship question?

2      A    The Secretary, as you would point out, is

3  not a voting rights lawyer, so I would not expect

4  him to necessarily come up with a rationale.

5  That's the job of the staff at work.

6      Q    You certainly wouldn't expect the

7  Secretary to have come up with the idea that the

8  reason he should want the citizenship question is

9  the Voting Rights Act; you wouldn't expect him to

10  come up that on his own?

11      A    I -- he might well.  I don't know.

12      Q    You have no reason to believe that he

13  did, right?

14          MR. GARDNER:  Objection.  Calls for

15  speculation.

16          THE WITNESS:  I'm not going to speculate

17  about what his rationale was.  You'd have to --

18  BY MR. GERSCH:

19      Q    Because --

20      A    -- ask him.

21      Q    -- because you have no idea what his

22  rationale is?

Page 269

1      A    That's correct.

2      Q    Counsel asked you about contact you made

3    with the Department of Justice --

4      A    Correct.

5      Q    -- starting with a Ms. Haney [sic], I

6    believe.

7           Do you recall that?

8      A    Yes.  I believe her name is Hankey,

9    but --

10     Q    Hankey.  I apologize.

11          What was the full name?  I can get it out

12    if you don't know it offhand.

13     A    Mary Blanche, but --

14     Q    I'll find it in here.

15     A    It's in one of these exhibits, the memo

16    that I wrote.  Here.

17     Q    Mary Blanche --

18     A    Yep.

19     Q    -- Hankey; is that right?

20     A    Yeah.

21     Q    All right.  So you went -- you called

22    Mary Blanche Hankey --

Page 270

1      A   Correct.

2      Q   -- with regard to adding a citizenship

3   question to the census, right?

4      A   Correct.

5      Q   And you wanted to see if the

6   Department of Justice would sponsor the question?

7      A   Correct.

8      Q   And you had a phone call with her, and

9   you had at least a meeting with her, right?

10      A   Right.

11      Q   So at least two contacts?

12      A   Three, when she called me back with

13   somebody else's name.

14      Q   Fair enough.

15         Didn't -- didn't Ms. Hankey say, why do

16   you want to have a citizenship question?

17      A   No, she didn't.

18      Q   Didn't come up, at all?

19      A   Nope.

20      Q   She referred you to a Mr. McHenry; is

21   that right?

22      A   Correct.