# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, *et al.*,<br><br>Defendants. | No. 1:18-cv-2921 (JMF) |
| NEW YORK IMMIGRATION COALITION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, *et al.*,<br><br>Defendants. | No. 1:18-cv-5025 (JMF) |

## DECLARATION OF EARL W. COMSTOCK

I, Earl W. Comstock, make the following Declaration pursuant to 28 U.S.C. § 1746, and state that under penalty of perjury the following is true and correct to the best of my knowledge and belief:

1. I am the Deputy Chief of Staff and Director of Policy at the U.S Department of Commerce ("DOC"). I am responsible for reviewing submissions to the Secretary from the various bureaus for alignment with departmental policy and for overseeing general policy implementation. The following statements are based upon my personal knowledge or on information supplied to me

in the course of my professional responsibilities. These statements are provided in support of the DOC's assertion of the deliberative process privilege in the above-captioned case.

2. Attached to this declaration is a list of those documents at issue in Plaintiffs' Sixth Letter Motion to Compel for which DOC continues to assert deliberative process privilege. I have been advised that Plaintiffs do not contest whether the deliberative process privilege generally covers the material withheld but rather only contest whether the privilege should be overcome. I have been further advised that, to make this latter determination, the court will apply a five-factor balancing test that weighs (1) the relevance of the evidence the agency seeks to protect; (2) the availability of other evidence; (3) the seriousness of the litigation; (4) the role of the agency in the litigation; and (5) the possibility that disclosure will inhibit future candid debate among agency decision-makers.

3. I have reviewed each of these documents. Excluding privacy-related redactions, as well as any other privileges claimed,, which are not challenged by plaintiffs or addressed in this declaration or in the attached list, the material withheld pursuant to the deliberative process privilege that appears in these documents may generally be characterized into three broad categories – drafts, handwritten notes, and predecisional deliberative discussion among DOC personnel and with DOJ personnel. I will address oneof the factors in the balancing test cited in my previous paragraph, the possibility that disclosure will inhibit further candid debate among agency decision-makers, as to each of these categories separately below:

**DRAFTS**

4. The material I have included in this category comprises a draft of responses to a reporter's inquiries (including comments on the draft) (Bates No. 2199-2204), a draft attorney-client privileged legal memo with preliminary analysis, advice, and recommendations (the attachment referenced in Bates No. 2461), drafts of proposed congressional testimony (Bates Nos. 3695-97 and

3698), drafts of response letters to Congress (Bates Nos. 5428 and 5440), and a draft of a memorandum analyzing alternatives regarding the citizenship question, with some handwritten notes (Bates No. 10351). These drafts represent essential steps in the process of responding to reporters or Congress, preparing for testifying before Congress, or making the decision at issue to reinstate a citizenship question. Disclosure of these drafts would discourage open and candid discussion between the individuals responsible for preparing those responses or making these decisions. This is especially true where, as here, the opinions and recommendations are utilized to make complicated and sensitive decisions related to the decennial census. If agency employees are aware that their opinions, deliberations, and recommendations as reflected in draft materials may be subject to public disclosure, as well as the scrutiny, second guessing, and criticism that would foreseeably follow, the quality and volume of input offered and received with regard to these matters could be adversely affected. Foreseeably, individual employees could be discouraged from sharing a full range of ideas or opinions -- for example, thoughts or opinions that are part of a brainstorming process, that are not necessarily fully formed, or that may later prove to be erroneous, unpopular, or controversial may no longer be freely offered. In addition, employees could become reluctant to engage in internal debates and disagreements that are critical to healthy decision making if they believe their drafts could later publicly exposed. Decision-making officials would thus be hindered in their ability to solicit and receive honest, unfiltered opinions and recommendations -- often from offices with divergent perspectives and priorities, which, in turn could jeopardize fulsome discussions of the issues, and ultimately, the desired goal of sound decision making.

5. For the foregoing reasons, release of the draft material withheld would harm DOC's deliberative process by revealing preliminary opinions, advice, and recommendations shared with decision makers and between agency employees, discouraging open, candid communications. These drafts should therefore be protected from disclosure.

**HANDWRITTEN NOTES**

6.      The documents I have included in this category are copies of memos or drafts of memos containing personal handwritten notes by Karen Dunn Kelley, Under Secretary for Economic Affairs, performing the nonexclusive duties of the Deputy Secretary of Commerce, on the margins or between the lines (Bates Nos. 10273, 10291, 102356, 11250-251, and 11252), or handwritten notes by Ms. Kelley written on notepaper (Bates No. 10299).  For the same reasons discussed above, disclosure of these notes (and the drafts on which they are written) would discourage open and candid discussion by individuals responsible for making agency decisions.  If agency employees are aware that their opinions, deliberations, and individual thoughts as reflected in their personal notes may be subject to public disclosure, as well as the scrutiny, second guessing, and criticism that would foreseeably follow, the quality and volume of input offered and received with regard to agency matters could be adversely affected.  Foreseeably, individual employees could be discouraged from noting and thereby deliberating on and articulating a full range of ideas or opinions -- for example, thoughts or opinions that are part of a brainstorming process, that are not necessarily fully formed, or that may later prove erroneous, be unpopular or controversial may no longer be freely offered.  In addition, employees could become reluctant to engage in internal debates and disagreements that are critical to healthy decision making, if they believe their notes supporting such debates could later publicly exposed.  Decision-making officials would thus be hindered in their ability to solicit and receive honest, unfiltered opinions and recommendations -- often from offices with divergent perspectives and priorities -- which, in turn could jeopardize fulsome discussions of the issues, and ultimately, the desired goal of sound decision making.

7.      For the foregoing reasons, release of these personal notes and the underlying drafts would harm DOC's deliberative process by revealing preliminary opinions of an agency employee,

discouraging open, candid deliberation on the issues. These notes should therefore be protected from disclosure.

### DELIBERATIVE DISCUSSIONS

8.      In this category I have placed three distinct email chains from which have been redacted (1) a discussion of a potential revision to quotations provided to a reporter (Bates No. 2160-2162), (2) a summary of DOC's understanding of DOJ's preliminary responses to initial contact regarding the citizenship question (Bates No. 2458 and 9834), and (3) personal views about a call between Commerce and Census regarding the citizenship question (Bates Nos. 3984). For the same reasons discussed above, disclosure of these views and comments would discourage open and candid discussion by individuals responsible for making agency decisions. Free and frank exchanges of ideas, opinions, and impressions among DOC employees are critical to the agency's function, and release of these materials could chill the frank inter- and intra-agency exchange of ideas pertaining to complex and sensitive agency decisions and harm agency decision making. If agency employees are aware that their opinions, deliberations, and views may be subject to public disclosure, as well as the scrutiny, second guessing, and criticism that would foreseeably follow, the quality and volume of input offered and received could be adversely affected. Foreseeably, individual employees could be discouraged from sharing a full range of ideas or opinions -- for example, thoughts or opinions that are part of a brainstorming process, that are not necessarily fully formed, which may later prove erroneous, be unpopular or controversial may no longer be freely offered. In addition, employees could become reluctant to engage in internal debates and disagreements that are critical to healthy decision making, if they believe those details could later publicly exposed. Decision-making officials would thus be hindered in their ability to solicit and receive honest, unfiltered opinions and recommendations- often from offices with divergent perspectives and priorities, which, in turn

could jeopardize fulsome discussions of the issues, and ultimately, the desired goal of sound decision making.

9.      For the foregoing reasons, release of these portions of these three email chains would harm DOC's deliberative process by revealing preliminary views and opinions, discouraging open, candid deliberation on the issues. This information should therefore be protected from disclosure.

_____
Earl W. Comstock
*Deputy Chief of Staff and Director of Policy*
Office of the Secretary
United States Department of Commerce

**TABLE OF DOCUMENTS AT ISSUE IN PLAINTIFFS' SIXTH MOTION TO COMPEL WITHHELD IN FULL OR IN PART PURSUANT TO THE DELIBERATIVE PROCESS PRIVILEGE[1]**

**Drafts**

| Bates Nos. | WIF or RIP | Date of Doc | Document Description | Reasons for DPP Redactions/Withholding |
|---|---|---|---|---|
| 2199-2204 | RIP | 2/28/18 | Email from Christa Jones to Earl Comstock containing draft responses to reporter and comments on draft | Release of draft responses to reporters' inquiries could chill the frank exchange of ideas among DOC employees pertaining to providing such responses and harm agency's ability and willingness to provide accurate and detailed responses |
| Attachment to 2461 (listed in log under Bates No. 11363) | WIF | 8/11/17 | Draft legal memo by James Uthmeier to Wilbur Ross, Wendy Teramoto and Earl Comstock, analyzing various issues and history associated with citizenship question | Draft legal research, advice and recommendations presented for review and input for further consideration, release of which would harm the agency's ability and willingness to provide advice and recommendations |
| 3695-3697 | RIP | 5/1/17 | Email from Earl Comstock to Wilbur Ross, containing preliminary draft testimony for congressional hearing | Release of draft congressional testimony could chill the frank exchange of ideas among DOC employees pertaining to finalizing such testimony and harm the agency's ability and willingness to provide accurate and detailed testimony |
| 3698 | RIP | 5/1/17 | Attachment to email above, containing preliminary draft testimony for congressional hearing | Release of draft congressional testimony could chill the frank exchange of ideas among DOC employees pertaining to finalizing such testimony and harm agency's ability and willingness to provide accurate and detailed testimony |

---

[1] Some of these documents also contain personal identifying information which has also been redacted.  As Plaintiffs have not challenged these redactions, the table does not address them.

| Bates Nos. | WIF or RIP | Date of Doc | Document Description | Reasons for DPP Redactions/Withholding |
|---|---|---|---|---|
| 5428 | WIF | 1/12/18 | Draft letter responding to Congressional inquiries re citizenship question | Release of draft responses to congressional inquiries could chill the frank exchange of ideas among DOC employees pertaining to finalizing such responses and harm agency's ability and willingness to provide accurate and detailed responses |
| 5440 | WIF | 1/12/18 | Draft letter responding to Congressional inquiries re citizenship question | Release of draft responses to congressional inquiries could chill the frank exchange of ideas among DOC employees pertaining to finalizing such responses and harm agency's ability and willingness to provide accurate and detailed responses |
| 10351 | WIF | unknown | Draft memo analyzing Alternatives C and D, with handwritten annotations by Karen Dunn Kelley | Release of draft memo analyzing alternatives could chill the frank exchange of ideas among DOC employees pertaining providing advice regarding issues before the agency and harm agency's ability to reach sound decisions |

**Handwritten Notes**

| Bates Nos. | WIF or RIP | Date of Doc | Document Description | Reasons for DPP Redactions/Withholding |
|---|---|---|---|---|
| 10273 | RIP | | Copy of January 19 memo from John Abowd with Karen Dunn Kelly's handwritten notes | Release of handwritten notes reflecting personal thoughts and reactions could chill the frank exchange of ideas among DOC employees providing advice regarding issues before the agency and harm the agency's ability to reach sound decisions |

2

| Bates Nos. | WIF or RIP | Date of Doc | Document Description | Reasons for DPP Redactions/Withholding |
|---|---|---|---|---|
| 10291 | WIF | unknown | Copy of January 19 memo from John Abowd with Karen Dunn Kelly's handwritten notes | Release of handwritten notes reflecting personal thoughts and reactions could chill the frank exchange of ideas among DOC employees providing advice regarding issues before the agency and harm the agency's ability to reach sound decisions |
| 10299 | WIF | unknown | Karen Dunn Kelley's handwritten notes on various issues relating to citizenship question | Release of handwritten notes reflecting personal thoughts and reactions could chill the frank exchange of ideas among DOC employees providing advice regarding issues before the agency and harm the agency's ability to reach sound decisions |
| 10356 | RIP | unknown | Draft of comparison of Alternatives C and D, with handwritten annotations from Karen Dunn Kelley | Release of handwritten notes reflecting personal thoughts and reactions could chill the frank exchange of ideas among DOC employees providing advice regarding issues before the agency and harm the agency's ability to reach sound decisions |
| 11250-11251 | WIF | unknown | Partial list of questions for John Abowd from Secretary Ross with Karen Dunn Kelley's handwritten notes | Release of handwritten notes reflecting personal thoughts and reactions and of the draft on which they are written could chill the frank exchange of ideas among DOC employees providing advice regarding issues before the agency and harm the agency's ability to reach sound decisions |

| Bates Nos. | WIF or RIP | Date of Doc | Document Description | Reasons for DPP Redactions/Withholding |
|---|---|---|---|---|
| 11252 | WIF | unknown | Partial list of questions for John Abowd from Secretary Ross with Karen Dunn Kelley's handwritten notes | Release of handwritten notes reflecting personal thoughts and reactions and of the draft on which they are written could chill the frank exchange of ideas among DOC employees providing advice regarding issues before the agency and harm the agency's ability to reach sound decisions |

**Other**

| Bates Nos. | WIF or RIP | Date of Doc | Document Description | Reasons for DPP Redactions/Withholding |
|---|---|---|---|---|
| 2160-2162 | RIP | 3/16/18 | Email from Michael Walsh to Wendy Teramoto and James Rockas, containing discussion of potential revision to quotations provided to a reporter | Release of discussion of proposed revision to response to reporter could chill the frank exchange of ideas among DOC employees pertaining to providing such responses and harm agency's ability and willingness to provide accurate and detailed responses |
| 2458 | RIP | 9/16/17 | Email from Earl Comstock to Wendy Teramoto discussing calls with DOJ and DHS | Release of preliminary, deliberative communication from DOJ regarding the census citizenship question could chill the frank exchange of ideas among DOC employees and between DOJ and DOC and harm the agency's ability to reach sound decisions |
| 3984 | RIP | 8/10/17 | Email from Wilbur Ross to Earl Comstock, discussing personal views on call with Census on citizenship question | Release of personal views on call with Census on citizenship question could chill the frank exchange of ideas among DOC employees and harm the agency's ability to reach sound decisions |

4

| Bates Nos. | WIF or RIP | Date of Doc | Document Description | Reasons for DPP Redactions/Withholding |
|---|---|---|---|---|
| 9834 | RIP | 9/1/17 | Email from Earl Comstock to Wilbur Ross discussing calls with DOJ and DHS | Same as 2458 |